MANUEL LEBRÓN, JR., ET AL., demandantes y apelantes, *v.* PORTO RICO RAILWAY, LIGHT AND POWER COMPANY, demandada y apelada.

Número 11421.

*Sometido:* 1 de febrero de 1955. *Resuelto:* 27 de septiembre de 1955.

*Guillermo Bauzá,* abogado de los apelantes; *Brown, Newsom & Córdova,* abogados de la apelada.

El Juez Asociado Señor Pérez Pimentel emitió la opinión del Tribunal.

Este es un pleito sobre reclamación de salarios incoado ante la antigua Corte de Distrito de San Juan por Manuel Lebrón, Jr., y otros 360 querellantes contra la Porto Rico Railway, Light & Power Company. En la demanda se ejercitan dos causas de acción. La primera se basa en la Ley núm. 49 de 7 de agosto de 1935 ((2) pág. 539) según fué interpretada en *Cardona* v. *Corte,* 62 D.P.R. 61, o sea, se reclama el pago de "la novena hora", y la segunda se funda en el art. 553 del Código Penal según fué interpretado en el caso de *Compañía Popular* v. *Corte,* 63 D.P.R. 121, o sea, para el cobro del "séptimo día". Luego de haber la demandada contestado la querella, la corte a quo, invocando la Regla 53 de las de Enjuiciamiento Civil, nombró un *"Master"* para que recibiera la prueba e informara sobre el resultado de la misma. El *master* así nombrado celebró varias vistas y recibió la prueba de ambas partes. Luego de sometídole el caso por alegatos, el *master* rindió su informe desestimando todas las reclamaciones de los querellantes. Éstos radicaron entonces objeciones al informe del *master*. La corte señaló una vista para oír a las partes sobre las referidas objeciones.

La querellada argumentó (1) que las objeciones eran en términos muy generales, (2) que las conclusiones de hecho del *master* debían ser aceptadas a menos que fueran claramente erróneas, y (3) que habiendo existido conflicto en la evidencia, las conclusiones de hecho del *master* no podían revocarse. Dentro de un término concedido por la corte a solicitud de los querellantes, éstos radicaron otro documento titulado "Objeciones al Informe del Master". La querellada solicitó entonces por moción escrita, que se confirmase el informe del *master*. A ello se opusieron los querellantes y finalmente las partes sometieron el caso a la corte, bajo las referidas objeciones al informe del *master* y la moción de la querellada solicitando su confirmación.

Después de hacer una cuidadosa revisión de toda la evidencia presentada ante el *master*, así como un detenido estudio de las cuestiones de derecho envueltas en el caso, la corte a quo adoptó y aprobó el informe del *master*. ([1]) En su consecuencia dictó sentencia declarando sin lugar todas y cada una de las querellas comprendidas en la demanda. No conformes los querellantes interpusieron este recurso de apelación, señalando la comisión del siguiente único error:

"El tribunal inferior cometió error al confirmar las conclusiones del *Master* siendo claramente erróneas."

Bajo este señalamiento general los apelantes discuten las mismas cuestiones que levantaron ante la corte sentenciadora en sus objeciones al Informe del *Master*.

El alcance de la revisión judicial de las conclusiones de un *master* está establecido tanto por las Reglas de Enjuiciamiento Civil como por la jurisprudencia y los comentaristas. En todos los casos la corte aceptará las conclusiones de hecho del *master*, a menos que sean claramente erróneas. Regla 53 (*e*) (2) de Enjuiciamiento Civil; *Dolan* v. *Day & Zimmerman*, 65 F. Supp. 923; *Collins* v. *Burton–Dixie Cor-*

---

([1]) "Las conclusiones de un *master* en tanto en cuanto la corte las adopte, serán consideradas como conclusiones del tribunal." Regla 52 (*a*) de las de Enjuiciamiento Civil.

*poration*, 53 F. Supp. 821; *Lupton* v. *Chase Nat. Bank of City of New York*, 89 F. Supp. 393; *Dyker Bldg. Co.* v. *United States*, 182 F.2d 85; *Anderson* v. *Mt. Clemens Pottery Co.*, 328 U. S. 680; 5 Moore's *Federal Practice* (2ª ed.), pág. 2981. Corresponde al *master* aquilatar la prueba testifical y determinar el peso de los testimonios de los testigos y su credibilidad. *Titus* v. *Rorick*, 167 F.2d 571; *O'Hara* v. *Murphy*, 137 F.2d 154, cert. denegado en 320 U. S. 795. Por tanto, cuando sus conclusiones de hecho están basadas en testimonio oral y está envuelta la credibilidad de los testigos, debe concederse gran peso a dichas conclusiones. *Stonega Coke & Coal Co.* v. *Price*, 106 F.2d 411; *O'Hara* v. *Murphy*, supra; 5 Moore's, ob. cit., pág. 2984. Esto no es así cuando las conclusiones del *master* están basadas en evidencia documental y deposiciones o cuando se trata de inferencias, deducciones o conclusiones derivadas de hechos incontrovertidos, admitidos o estipulados, en cuyo caso ni la corte sentenciadora ni el tribunal de apelación están en situación distinta a la del *master* para hacer sus propias conclusiones. *Thruston* v. *Nasville & American Trust Co.*, 32 F. Supp. 929; *Carter Oil Co.* v. *McQuigg*, 112 F.2d 275; *Kycoga Land Co.* v. *Kentucky River Coal Corp.*, 110 F.2d 894 y casos allí citados. En cuanto a las conclusiones de derecho del *master* y aquellas determinaciones suyas que envuelvan una cuestión mixta de hecho y de derecho, la Regla 53 (*e*) (2), no restringe, en forma alguna, el alcance de la revisión judicial. Véase 5 Moore's, ob. cit. a la pág. 2989 y casos citados al escolio 1 de dicha página. En la revisión judicial de las conclusiones de hecho de un *master* bajo la Regla 53 (*e*) (2), impera el mismo criterio, o la misma piedra de toque, que en la revisión en apelación de las conclusiones del tribunal de distrito (hoy Superior), bajo la Regla 52 (*a*), en lo que a la disposición "a menos que sean claramente erróneas", respecta. 5 Moore's ob. cit., pág. 2982; *United States* v. *Village of Highland Falls*, 154 F.2d 224, cert. denegado 329 U. S. 720.

■ Por otro lado, normalmente este Tribunal aceptará las conclusiones de hecho de un *master*, cuando éstas han sido confirmadas y adoptadas por el Tribunal Superior. Ello no quiere decir que este principio sea inflexible, sino que seguimos la regla de que una corte de apelación no alterará las conclusiones de un *master*, confirmada por una corte inferior, sobre una cuestión de hecho disputable, a menos que se haya cometido un claro y manifiesto error. Véase *Beckley Nat. Bank* v. *Boone*, (CCA 4th., 1940), 115 F.2d 513, cert. denegado 313 U. S. 558; *In re Van Sweringen* (CCA 6th., 1940), 111 F.2d 378; *In re Avery*, (CCA 6th., 1940), 114 F.2d 768; *Badenhausen* v. *Guaranty Trust Co. of New York*, (CCA 4th., 1944), 145 F.2d 40, cert. denegado 323 U. S. 797; *Dyker Building Co.* v. *United States, to use of Parreco*, (App. D.C. 1950), 182 F.2d 85; *Connolly* v. *Gishwiller*, (CCA 7th., 1947), 162 F.2d 428, cert. denegado 332 U. S. 825; *Atwood* v. *Kleberg*, (CCA 5th., 1947), 163 F.2d 108, 114, cert. denegado 332 U. S. 843; *Michael Del Balso* v. *Carozza*, (App. D.C., 1943), 136 F.2d 280; *O'Hara* v. *Murphy*, (CCA 1st., 1943), supra; *B. F. Sturtevant Co.* v. *Massachusetts Hair & Felt Co.*, (CCA 1st., 1941), 122 F.2d 900, cert. denegado 315 U. S. 823.

■ Como hemos indicado antes, en la segunda causa de acción se reclamaban salarios a tipo doble por cada séptimo día (día de descanso) a tenor con las disposiciones del art. 553 del Código Penal según fué interpretada en *Compañía Popular* v. *Corte*, supra. En relación con esta segunda causa de acción la querellada había planteado como defensa la inconstitucionalidad del referido art. 553. Pendiente aún el caso ante el *master*, resolvimos en *Laboy* v. *Corp. Azucarera Saurí & Subirá*, 65 D.P.R. 422, que las disposiciones del art. 553 del Código Penal, según interpretadas en *Compañía Popular* v. *Corte*, supra, eran nulas y sin efecto alguno por estar en conflicto con el Acta Orgánica de Puerto Rico. A tenor con dicha decisión el *master* desestimó la demanda en cuanto a la segunda causa de acción. Los apelantes no objetaron esta conclusión del *master*.

En la primera causa de acción, 281 querellantes reclamaban salarios que no le habían sido. pagados a tiempo doble por trabajo realizado en exceso de ocho horas al día.

De estas 281 reclamaciones, el *master* resolvió que 15 fueron presentadas por inadvertencia con carácter duplicado. Los querellantes aceptaron esta conclusión del *master*. Otros 27 querellantes no presentaron prueba alguna para sostener sus reclamaciones y las mismas fueron desestimadas. Los querellantes aceptaron también esta conclusión del *master*.

■■ De los 281 querellantes, 186 de ellos figuraban como demandantes en el caso de *Lino Salgado Ortiz, et al.* v. *Porto Rico Railway, Light & Power Company*, aquí querellada, seguido bajo el número—— Caso Civil 379 ante la Corte de Distrito de Estados Unidos para Puerto Rico. En dicho caso se dictó una Sentencia por Consentimiento con fecha 28 de diciembre de 1942, condenando a la querellada a pagar cierta cantidad de dinero en satisfacción de todas las reclamaciones de dichos 186 querellantes bajo la Ley Federal de Normas Razonables de Trabajo, y bajo la ley insular núm. 49 de 7 de agosto de 1935. (2)   La querellada dió cumplimiento a

---

(2) Dicha Sentencia por Consentimiento lee en parte, como sigue:

"Esta causa ha venido a ser oída en este término a base de una estipulación radicada por las partes en esta misma fecha, la cual es· por la presente aprobada, y de acuerdo con los términos de dicha estipulación por la presente se ordena, adjudica y decreta:

"1. Que la corporación demandada satisfaga a los demandantes la suma de dinero especificada y que figura al lado de los nombres de los demandantes en la declaración o informe anexo a la estipulación archivada y cuya declaración o informe fué preparado por la firma de contadores públicos, Sparrow, Waymouth & Co., fechado el 21 de diciembre de 1942, menos 10%, en pago completo y total de todas las reclamaciones, requerimientos y causas de acción de los demandantes contra la corporación demandada por salarios, horas extras y daños liquidados bajo la Ley (Federal) de Normas Razonables de Trabajo de 1938 y bajo todas las leyes en vigor en Puerto Rico que reglamentan las horas de trabajo y las relaciones obrero patronales.

"2. El cumplimiento de este decreto y el pago por la corporación demandada de acuerdo con los términos de esto tendrá el efecto de operar como un descargo y pago completo a favor de la corporación demandada de todas las reclamaciones de los demandantes en este caso y de cualquier otro empleado de la corporación demandada que se unan en esta acción [y] acepten este decreto, por salarios, horas extras y daños liquidados y bajo

dicha sentencia y al recibir los pagos correspondientes, los 186 querellantes otorgaron con dicha querellada mediante documento escrito un contrato de Transacción en el que fueron incluídas específicamente sus alegadas reclamaciones bajo la Ley núm. 49 de 7 de agosto de 1935.(3)   En el caso de *Urbino* v. *Porto Rico Railway, Light & Power Co.*, 164 F.2d 12, se resolvió que la susodicha Sentencia por Consentimiento era válida.(4)

El *master* declaró con lugar la defensa de cosa juzgada en cuanto a estos 186 querellantes y desestimó sus querellas. Contra esta conclusión los querellantes presentaron objeciones y ahora alegan que la misma es errónea porque (1) ellos

todas las leyes en vigor en Puerto Rico reglamentando las horas de trabajo y las relaciones obrero patronales . . . . . ."

(3) La parte dispositiva de este contrato reza así:

". . . Por las razones anteriormente expuestas, las partes han acordado este Contrato de Transacción, que llevan a efecto bajo las siguientes cláusulas y condiciones: A.—Por y en consideración a las sumas de dinero pagadas por la corporación a los empleados, las cuales se especifican y detallan al lado de la firma de cada uno de ellos, y las cuales sumas de dinero los empleados acusan haber recibido a su entera satisfacción, los empleados por la presente aceptan todos los términos y disposiciones de la sentencia dictada por la Corte de Distrito de los Estados Unidos para Puerto Rico en el caso civil núm. 3179 y convienen y consiente en que sus abogados, o los abogados de la corporación radiquen a nombre de ellos las mociones correspondientes, uniéndose en dicha acción y aceptando los términos de dicha sentencia, y por la presente Relevan y Exoneran a la corporación de toda clase de responsabilidad por todas las reclamaciones, demandas o causas de acción que los empleados abajo firmantes tengan o pudieran tener contra la corporación por salarios, tiempo extra y daños y perjuicios en relación con los trabajos hechos y los servicios prestados por los empleados de la corporación bajo la Ley de Normas de Salarios (sic) Federal de 1938, bajo la Ley núm. 49 de 7 de agosto de 1935 y bajo todas las leyes que rigen regulando las horas de trabajo y las relaciones de patronos y empleados.—Firmado en San Juan, Puerto Rico, hoy veintiocho de diciembre de mil novecientos cuarenta y dos.—"

(4) En dicho caso se dijo:

"No habiéndose demostrado fraude o que se intimidara a los demandantes cuando mediante arreglo pusieron fin a su primera acción contra el demandado, verdaderamente debemos suponer a base de la aprobación por la Corte de Distrito de aquel arreglo en su decreto por consentimiento y de su conclusión en el caso de autos, que se llegó al arreglo por medios honrados y justos en términos de igualdad no viciados por el fraude o la intimidación, no vemos razón por la cual no deba dársele efecto al estatuto de acuerdo con sus claras disposiciones."

nunca consintieron en la sentencia ni dieron su consentimiento en el contrato de transacción; (2) ni el contrato ni la sentencia incluían sus reclamaciones bajo la Ley núm. 49 de 7 de noviembre de 1935; y (3) el contrato de transacción es contrario al orden público.

En cuanto al primer punto el *master* concluyó lo siguiente:

". . . . Esta aseveración, sin embargo, se destruye con el testimonio de los Lcdos. Arturo Ortiz Toro e Hipólito Marcano, abogados de los querellantes en dicho caso, la del Lcdo. Guillermo González, abogado de la querellada en dicho caso, el Director o Manager de la querellada, Paul W. Raymer, y con el testimonio de algunos de los propios querellantes, que definitivamente establecen que estos 186 querellantes voluntariamente otorgaron el susodicho Contrato sobre el cual se basó el decreto de la Corte Federal, y que ellos conocieron y entendieron los términos del mismo y que sus abogados le hicieron una explicación amplia y detenida de todos los pormenores de la transacción."

Esta conclusión está basada en testimonio oral. Hay evidencia suficiente en el récord para sostenerla. Correspondía al *master* aquilatar la prueba testifical, determinar la credibilidad de los testigos y el peso de sus testimonios. *Titus* v. *Rorick,* supra; *O'Hara* v. *Murphy,* supra. Habiendo sido confirmada dicha conclusión de hecho por la corte a quo, no la alteraremos en apelación, en ausencia de demostración de que se ha cometido un claro y manifiesto error. Reglas 52 (*a*) y 53 (*e*) (2) de Enjuiciamiento Civil; 5 Moore's *Federal Practice,* pág. 2982; *United States* v. *Village of Highland Falls,* supra.

En cuanto al segundo punto tampoco tienen razón los apelantes. La Sentencia por Consentimiento y el Contrato de Transacción se referían en términos específicos e incluían las reclamaciones bajo la ley insular núm. 49 de 1935, que son las mismas reclamaciones que se hacen en el presente litigio.

Tampoco podemos convenir con los apelantes en que el contrato de transacción sea contrario al orden público. Sus *reclamaciones cubren el período entre el 7 de noviembre*

de 1935 y el 24 de octubre de 1938 y están predicadas, según ya hemos dicho, en la Ley núm. 49 de 1935. Esta no era una ley de salarios; era un estatuto de horas máximas de trabajo cuyo único fin era limitar las horas de trabajo de un día regular. *Cardona* v. *Corte*, 62 D.P.R. 61 y *Chabrán* v. *Bull Insular Line*, 69 D.P.R. 269. Dicho estatuto no contenía disposición alguna prohibiendo las transacciones extrajudiciales o judiciales de reclamaciones de salarios no pagados. Tampoco sabemos de algún otro estatuto insular que prohibiera entonces esta clase de transacciones, [5] ni de alguna decisión nuestra sobre materia de transacciones extrajudiciales o ju-

---

[5] Fué en 1941 que se aprobó la Ley núm. 8 de 5 de abril de ese año ((1) pág. 303), creando la Junta de Salario Mínimo con autoridad para fijar el salario mínimo, horas de labor y otras condiciones de trabajo. Por su sección 20 se declaró ilegal el pago de un salario inferior al mínimo fijado por la Junta conforme a la ley y por la sec. 25 se autorizó la reclamación judicial de las cantidades no pagadas hasta el importe total del salario mínimo, más una suma igual al cincuenta por ciento de las cantidades dejadas de satisfacer por concepto de penalidad adicional todo ello independientemente de cualquier convenio sobre trabajo por un salario menor.

Aunque este estatuto no contiene alguna disposición sobre transacciones sobre salarios adeudados, las indicadas secciones 20 y 25 señalaban una política pública en cuanto a que (a) eran nulos los convenios sobre trabajo por un salario inferior al mínimo fijado por la Junta de Salario Mínimo, (b) era ilegal el pago de un salario inferior al mínimo, y (c) se concedía al obrero el derecho a reclamar judicialmente la penalidad adicional. Esta ley no derogó la de 1935. Sin embargo, sus disposiciones, por ser prospectivas, en nada afectaban las reclamaciones de los querellantes.

La Ley de 1935 fué derogada por la núm. 379 de 15 de mayo de 1948 ((1) pág. 1255). En esta ley se establece una política pública definida en lo que respecta a transacciones. Dicha ley declara irrenunciable la compensación adicional fijada para las horas extras de trabajo, y nulo todo convenio del empleado renunciando tal compensación, artículo 12; concede el derecho al empleado a reclamar judicialmente los salarios no pagados al tipo fijado en dicha ley para horas regulares y horas extras de trabajo, más una suma igual por concepto de liquidación de daños y perjuicios; autoriza la transacción de una reclamación judicial con la intervención del Comisionado del Trabajo, hoy Secretario de Trabajo; declara nula toda transacción extrajudicial sobre el pago de salarios por horas regulares, horas extras y por la compensación adicional en concepto de liquidación de daños. y perjuicios, excepto cuando la transacción se verifique ante el Comisionado del Trabajo o cualquiera de los abogados del Departamento del Trabajo designado por dicho Comisionado. Art. 13.

694

diciales bajo la Ley de 1935. Aunque la cuestión se suscitó en los casos de *Jiménez* v. *Corte*, 65 D.P.R. 37 y *García* v. *Corte*, 69 D.P.R. 152, no llegamos a resolverla por considerarlo innecesario bajo los hechos de dichos casos. De todos modos no nos detendremos en la discusión de este punto. En *Urbino* v. *P. R. Ry., Light & Power Co.*, 164 F.2d 12, se levantó esta misma cuestión en relación con la Ley Federal de Normas Razonables de Trabajo, que a diferencia de nuestra ley de 1935, sí es una ley de salario mínimo. Allí se atacó el mismo Decreto por Consentimiento y el mismo Contrato de Transacción que están ahora bajo nuestra consideración y se sostuvo su validez, rechazándose la proposición de que eran contrarios al orden público. Como consecuencia prosperó la defensa de cosa juzgada levantada por la demandada a base del Decreto por Consentimiento ahora bajo nuestra consideración.

En vista de todas las circunstancias aquí envueltas, nos sentimos obligados a sostener la validez de dicho Decreto por Consentimiento y el Contrato de Transacción, con sus efectos legales correspondientes ya que los querellantes tuvieron la oportunidad de levantar la misma cuestión en relación con la ley insular y no lo hicieron.(6)

El *master* concluyó que las reclamaciones de 57

---

(6) Una sentencia por consentimiento es un acto judicial ejecutado en el ejercicio del poder judicial. *Pope* v. *United States*, 323 U. S. 1; *United States* v. *Radio Corporation of America*, 46 F. Supp. 654. La regla general es que una sentencia válida dictada por consentimiento tiene el mismo alcance, en cuanto a sus efectos como cosa juzgada, que una sentencia dictada después de mediar una contestación y una contienda, y es por tanto obligatoria y concluyente entre las partes y los que con éstas tengan nexos jurídicos (*privity*). Véase *Valdés* v. *Hastrup*, 64 D.P.R. 595 y Anotación en 97 L. Ed. 1191. La doctrina de cosa juzgada (*res judicata*) que según es sabido está basada en la política pública de poner fin a los litigios, cede ante otras consideraciones de política pública diferentes a la que sirve de base a dicha doctrina. Las cortes, sin embargo, son renuentes a reconocer estas excepciones a la doctrina de cosa juzgada y solamente lo hacen en situaciones verdaderamente extraordinarias, aunque con más liberalidad cuando se trata de sentencias por consentimiento. Véase Anotaciones en 97 L. Ed. 1193 y 88 L. Ed. 389. No estamos convencidos de que el caso de estos querellantes caiga dentro de las excepciones a la regla ya indicada.

querellantes habían prescrito. La querella fué radicada el día 7 de mayo de 1945. Estos 57 querellantes habían dejado de prestar "los respectivos servicios" a la querellada en o antes del día 6 de mayo de 1942 por virtud de (*a*) haber renunciado; (*b*) haberse retirado bajo pensión; (*c*) haberse despedido, o dejado de prestar los servicios por un tiempo sustancial sin que existieran circunstancias que demostraran que su contrato de empleo no se había terminado. Sin embargo, en relación con estas conclusiones del *master* los apelantes se limitan a discutir ante nos los efectos, a los fines de la prescripción, del retiro por pensión.

Arguyen equivocadamente y sin citar autoridad alguna, que mientras el obrero disfruta de una pensión sigue sosteniendo con su patrono las relaciones de obrero y patrono y que mientras estas relaciones no cesen, no comienza a correr el período de prescripción.

El art. 1867 del Código Civil(⁷) dispone que por el transcurso de tres años prescriben las acciones para el cumplimiento de la obligación de pagar a los menestrales, criados y jornaleros el importe de sus servicios y que el tiempo para la prescripción "se contará desde que dejaron de prestarse los respectivos servicios". Como bien apunta la apelada, el argumento de los apelantes ignora el hecho básico de que precisamente la jubilación significa el cese de los servicios. El empleado jubilado cobra la pensión pero no presta servicios. Ya hemos resuelto en otros casos que el término prescriptivo de tres años que provee el art. 1867 del Código Civil debe contarse desde la fecha en que dejaren de prestarse los respectivos servicios. *Vicenty* v. *Corona Brewing Corpora-*

---

(⁷) Dicho artículo dispone en lo pertinente:

"Artículo 1867.—Por el transcurso de tres años prescriben las acciones para el cumplimiento de las obligaciones siguientes:

"3.—La de pagar a los menestrales, criados y jornaleros el importe de sus servicios, . . . . .

"El tiempo para la prescripción de las acciones a que se refieren los tres párrafos anteriores se contará desde que dejaron de prestarse los respectivos servicios."

*tion*, 73 D.P.R. 135; *Chabrán* v. *Bull Ins. Line*, 69 D.P.R. 269; *Valiente & Cía.* v. *Corte*, 68 D.P.R. 529; *Muñoz* v. *Corte*, 63 D.P.R. 236.

En vista de lo expuesto tenemos que concluir que no es errónea la conclusión del *master* sobre la cuestión de prescripción y que por lo tanto, la corte a quo actuó correctamente al confirmarla.

█ El *master* concluyó que 162 reclamantes habían recibido pago a tipo doble por todas las horas extras trabajadas en exceso de 8 horas al día. De estas reclamaciones, 26 fueron desestimadas por este motivo ya que las otras 136 fueron desestimadas por razones distintas, a saber: prescripción, no haberse ofrecido evidencia para sostenerlas y estar los querellantes incluídos entre los que recibieron pago bajo el Contrato de Transacción.

En el año 1942 todos los libros, récords y cuentas de la querellada pasaron a poder de la Autoridad de Fuentes Fluviales. Después de radicada la presente querella, la firma de contadores públicos, Stagg, Mather & Hough, realizó un estudio y examen de todos los récords, libros y cuentas de la querellada. Aunque los récords no estaban completos, las nóminas de pago, con alguna que otra excepción, aparecieron y fueron investigados por dicha firma de contadores. Todos los antes referidos documentos fueron presentados en evidencia por la querellada. El *master* recibió también en evidencia el testimonio del pagador de la querellada y el de su director. Fundándose en esta evidencia documental y testifical presentada por la querellada y en el propio testimonio de algunos de los querellantes, el *master* determinó, como cuestión de hecho, que estos 162 querellantes habían recibido paga a tipo doble por las horas extras trabajadas por ellos en exceso de ocho horas el día.

Después de hacer una exposición detallada en forma de conclusiones de hechos en cuanto a la naturaleza del contrato de empleo bajo el cual trabajaban estos querellantes para la querellada, forma en que se llevaban sus récords, horarios de

trabajo que ésta tenía establecidos, forma de pago de salarios, sistema de turno en las labores, etc., el *master* hizo constar:

"Las conclusiones anteriores son también sostenidas por el testimonio de algunos de los reclamantes, a pesar de que en su gran mayoría negaron que hubieren recibido pago alguno por sobre tiempo así como también negaron que las horas regulares de trabajo eran las arriba indicadas. Independientemente del testimonio de estos reclamantes, los récords y cuentas de la querellada y el testimonio vertido en relación con éstos no fué impugnado así como tampoco su corrección o legitimidad. Dichos récords y cuentas aparentemente han sido llevados durante el curso regular del negocio de la querellada, y el montante total que aparece haber sido pagado por las nóminas concuerda con el estado general financiero de los libros que fueron también examinados por la susodicha firma de contables."

La prueba pues en cuanto al número de horas extras trabajadas por los querellantes y en cuanto a si éstos habían o no recibido pago por dichas horas extras fué contradictoria. El *master* resolvió el conflicto de la prueba en contra de los querellantes y no se nos ha demostrado que al así hacerlo abusara de su discreción. Él no venía obligado a desechar la prueba documental y testifical presentada por la querellada y a dar entero crédito a la prueba testifical poco precisa y convincente presentada por los querellantes. *Jiménez* v. *Corte*, 65 D.P.R. 37 y *Vélez* v. *Royal Bank*, 65 D.P.R. 967. En su consecuencia, esta conclusión del *master* no era claramente errónea y por tanto no cometió error la corte a quo al confirmarla.

Queda por considerar las reclamaciones de once querellantes. El *master* concluyó que cinco de estos reclamantes no se encontraban trabajando para la querellada durante el período de sus respectivas reclamaciones según lo revelan los récords de dicha querellada y en su consecuencia desestimó sus reclamaciones.

No nos detendremos a discutir esta conclusión del *master*, ya que tampoco lo hacen los apelantes en su alegato. Las otras seis querellas restantes fueron desestimadas por el *master* bajo el fundamento de que la prueba presentada por

estos seis querellantes era insuficiente para sostener sus reclamaciones.

Al atacar estas conclusiones los apelantes hacen referencia en su alegato y discuten únicamente las reclamaciones de Rogelio Bibiloni, Euclides Quiñones Vidal y Carlos Sabater. En cuanto a los dos primeros, el *master* resolvió correctamente que la prueba presentada por ellos era tan general e imprecisa que se hacía imposible determinar, aun aproximadamente, el número de horas extras que alegaban haber trabajado para la querellada. Sus conclusiones encuentran amplio apoyo en la prueba, y no las alteraremos en apelación. En cuanto al *onus probandi* en los casos de esta naturaleza, véanse *Vélez v. Royal Bank,* 65 D.P.R. 967 y *Sierra v. Eastern Sugar Associates,* 71 D.P.R. 888. Respecto al otro querellante Sabater, el *master* no dió crédito a su testimonio y resolvió en su contra el conflicto de la prueba en cuanto al número de horas extras alegadamente trabajadas por él. No encontramos motivos para modificar esta conclusión del *master.*

*Por todas las razones antes expresadas, se confirma la sentencia apelada.*

El Juez Asociado Sr. Belaval no intervino.