Agustín Matías Rodríguez, demandante y recurrido, *v.* Administración de Programas Sociales del Departamento de Agricultura y Comercio; Secretario de Agricultura y Comercio, demandados y recurrentes.

*Número:* R-63-67 *Resuelto:* 1 de abril de 1965

*J. B. Fernández Badillo, Procurador General, Rodolfo Cruz Contreras, Sub-Procurador General, Carlota Capó* y *Américo*

*Serra, Procuradores Generales Auxiliares,* abogados de los recurrentes; *Guillermo Bobonis Díaz,* abogado del recurrido.

Sala integrada por el Juez Presidente Interino Señor Pérez Pimentel y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Con el fin de conjurar ciertas características indeseables que presentaba el sistema para el empleo por el gobierno estatal y sus agencias de trabajadores a jornal, la Asamblea Legislativa aprobó la Ley Núm. 110 de 26 de junio de 1958, 3 L.P.R.A. secs. 711 a 711k (Supl. 1963, págs. 129–134), conocida como la Ley de Personal Irregular del Gobierno. Entre otras se indicó que se pagaba tiempo extra a algunos trabajadores por jornal mientras no se permitía tal pago a los empleados regulares. *Diario de Sesiones,* vol. 10, t. 3, pág. 1551. Cf. *Autoridad de Comunicaciones* v. *Tribl. Superior,* 87 D.P.R. 1, 14 (1963). Al efecto, el Art. 3, 3 L.P.R.A. sec. 711b, aunque autoriza el pago de compensación por horas extraordinarias de labor señala que ésta deberá reducirse a un mínimo y sólo en circunstancias extraordinarias. Lee así: (¹)

"El Gobierno de Puerto Rico pagará compensación extraordinaria al personal irregular que utilice durante tiempo extra. Los servicios que preste el personal irregular en exceso de ocho (8) horas en cualquier día laborable o en día domingo o de fiesta oficial, se compensarán a tiempo doble a base del tipo de com-

---

(¹) El informe de la Comisión de Elecciones y Personal a la Cámara de Representantes sobre el P. del S. 321, que se convirtió en la Ley Núm. 110, se refiere a este artículo en la siguiente forma, *Diario, op. cit.,* pág. 1552:

"Se autoriza el pago de tiempo extra al personal irregular por trabajo en exceso de ocho horas diarias [y] durante los domingos y días feriados a base de tiempo doble. En otras palabras se establece la jornada regular de trabajo a base de ocho horas diarias, y seis días a la semana (48 horas). La jornada de trabajo de los empleados regulares es de 37½ a 48 horas semanales."

Véase, 3 R.&R.P.R. sec. 711a–11.

pensación ordinaria. La compensación extraordinaria se pagará siempre en efectivo.

"Las agencias reducirán a un mínimo la utilización de personal irregular durante tiempo extra. Tal utilización estará justificada únicamente en las siguientes circunstancias:

"(a) cuando lo requiera la índole de los servicios que presta la agencia;

"(b) cuando no se pueda disponer del personal necesario para completar ciertas tareas dentro de la jornada regular; o

"(c) cuando exista un caso de emergencia o así lo requiera el bienestar o la seguridad públicos."

Agustín Matías Rodríguez, maestro de obras empleado por la Administración de Programas Sociales del Departamento de Agricultura, inició una reclamación para que se le compensara por horas extras trabajadas entre el año 1955 y el mes de octubre de 1959. Luego, limitó la misma al período entre el 1ro. de julio de 1958, fecha de vigencia de la Ley Núm. 110, y el 9 de octubre de 1959, en que cesó de prestar servicios. Celebrado el juicio en los méritos, el tribunal de instancia determinó que el querellante era acreedor a la suma de $2,257.20, por razón de compensación a tipo sencillo por labor realizada durante 66 sábados, y doble, por 4 horas trabajadas durante los domingos y dos horas extras diarias durante los otros cinco días laborables. Expedimos auto de revisión.

1. No hay controversia sobre el hecho de que Matías era un empleado irregular comprendido dentro del grupo 2 de la guía de clasificación de las ocupaciones preparadas por el Director de la Oficina de Personal, 3 R.&R.P.R. sec. 711a–19, que comprende al "Maestro de obra, arte u oficio (Trabajador diestro con funciones de supervisión en trabajos de carpintería, ebanistería, electricidad, mecánica, plomería, pintura, o en cualquier otro arte u oficio análogo)." Para la fecha de la reclamación trabajaba en el proyecto Río Hondo, de Comerío, emprendido por la Administración de Programas Sociales como parte del programa de vivienda a bajo costo. En esencia, este programa consiste en la construcción de hoga-

res mediante un plan cooperativo en el cual participan los vecinos de determinado sector. Todos los beneficiarios participan en ciertas tareas preliminares, tales como la carga, descarga y acarreo de equipo y materiales de construcción; el grupo luego se divide en grupos de tres o más personas, las cuales realizan la labor de preparación de los solares para comenzar la construcción hasta que llega el momento de pintar las viviendas; las siguientes partes de las viviendas se hacen bajo el plan de trabajo de grupos: las zapatas, columnas, paredes, divisiones interiores, techos, balcón, marcos para las puertas y ventanas y resanado; los siguientes detalles son responsabilidad de cada uno de los beneficiarios: pintura de la vivienda, puertas y ventanas, instalación eléctrica y servicio sanitario. *El trabajo se lleva a cabo en forma simultánea* en todas las viviendas en la misma etapa de construcción, aunque si un beneficiario desea aportar personalmente trabajo adicional para su vivienda, así puede hacerlo siempre y cuando haga los arreglos necesarios con el supervisor (el maestro de obras) de la obra. Véanse, los Arts. 3 y 4 del Reglamento para el Programa de Viviendas a Bajo Costo, 28 R.&R.P.R. secs. 527a–3 y 4, en vigor desde el 28 de septiembre de 1957.

Específicamente, el párr. (e) del Art. 3 de dicho reglamento, dispone que:

"Cada uno de los beneficiarios se comprometerá a aportar su trabajo personal por lo menos durante un día laborable a la semana, y sin remuneración alguna. *Además, se comprometerá a trabajar con el grupo el sábado o el domingo y las horas extras necesarias* durante la construcción de las viviendas . . . ." (Énfasis suplido.)

Nos hemos extendido en la descripción de la forma en que se lleva a cabo el programa de viviendas a bajo costo porque ella es la mejor demostración de que existe una razonable probabilidad de que se requiera del supervisor que preste servicios durante todos los días de la semana y aun después

de las cuatro de la tarde. Por lo menos, así lo demostró concluyentemente la prueba ofrecida durante la vista, y tal conclusión no será alterada en el presente recurso de revisión.

 La parte recurrente invoca en esta etapa de los procedimientos la defensa afirmativa de impedimento (*estoppel*) que no adujo en su contestación a la demanda original ni a la demanda enmendada. *Cobián* v. *Fuentes*, 79 D.P.R. 393, 399 (1956); *Hernández* v. *Caraballo*, 74 D.P.R. 29, 36 (1952). Insiste en que el reclamante era y siempre fue su propio supervisor en cuanto a las horas y los días trabajados y que era a base del informe semanal que él mismo rendía a la oficina central que se preparaban las nóminas y se le satisfacía su salario; y que, bajo tales circunstancias, la administración no tenía ni podía tener otra base para determinar la labor realizada. Cita a *Mortenson* v. *Western Light & Telephone Co.*, 42 F.Supp. 319, 321 (Iowa 1941). No tenemos dudas de que en un caso apropiado la defensa de impedimento, bajo las circunstancias apuntadas, puede derrotar una reclamación por horas extras. Generalmente debe intervenir algún elemento de engaño de parte del empleado, tales como encubrir u ocultar que trabaja horas extras, llevar un récord secreto de las horas extras trabajadas, o hacer informes falsos sobre el número de horas trabajadas. *Cotton* v. *Weyerhaeuser Co.*, 147 P.2d 299 (Wash. 1944); *Gale* v. *Fruehauf Trailer Co.*, 145 P.2d 125 (Kan. 1944); *Dollar* v. *Caddo River Lumber Co.*, 43 F.Supp. 822 (Ark. 1941). Ahora bien, el impedimento no opera cuando la conducta del empleado consiste en meramente aceptar un salario inferior al realmente devengado, *Warren-Bradshaw Drilling Co.* v. *Hall*, 317 U.S. 88 (1942); *Overnight Motor Co.* v. *Missel*, 316 U.S. 572 (1942); esperar hasta que cesa en el empleo para instar su reclamación por horas extras, *Wilson Oil Co.* v. *Hardy*, 164 P.2d 209 (N.M. 1945); *Lewis* v. *Nailling*, 36 F.Supp. 187 (Tenn. 1940); o en figurar entradas

falsas en las nóminas conforme a un acuerdo al efecto con el patrono, *Butler* v. *Carter*, 32 S.E.2d 808 (Ga. 1945).

█ Sin embargo, presumiendo que los hechos fueron como los relata la recurrente, como el tribunal a quo no hizo determinación alguna sobre el particular, tenemos que presumir que le dio crédito a la explicación ofrecida por el demandante:

"P. ¿Cuántas horas informaba usted como trabajadas?

R. Ahí existe que la Administración nos obligó a nosotros, a los maestros de Obra a trabajar después de las cuatro sin límite de tiempo.

P. Mi pregunta es si usted hacía ese informe?

R. Sí, señor.

P. Y en ese informe, ¿cuántas horas informaba que trabajaba?

R. A veces todo el tiempo que trabajaba.

P. O sea, ¿sobre cuarenta y cuarenta y ocho horas?

R. Sí, señor.

P. ¿O sobre ocho al día?

R. Sí, señor.

P. ¿En alguna ocasión se le llamó la atención sobre ese hecho?

R. Sí, señor.

P. ¿Qué se le dijo?

R. En unos informes que yo envié, *yo envié a ellos el tiempo que había trabajado y entonces, a mí se me reclamó, se me cogió por el cuello.*

P. ¿Qué tiempo dio?

R. Si trabajaba de cuatro a siete ese era el que informaba.

P. ¿Y qué pasó?

R. Entonces, por ese tiempo que ponía después de las cuatro, *se me regañó y me dijeron qué me constaría [sic] si informaba ese tiempo de más.*

P. ¿Y qué le requirieron, que informara qué?

R. *Entonces, me requirieron que el tiempo solamente que yo podría enviar en ese informe era de siete a cuatro nada más.*

P. ¿Ocho horas diarias?

R. Sí, señor.

P. ¿Y le dijeron qué?

R. Que me iban a suspender.

P. Y de hecho, ¿lo suspendieron?

R. Sí, señor, fui suspendido." (Énfasis suplido.)

que luego ratificó en el contrainterrogatorio:

"P. Señor Matías, ¿usted me puede decir si usted recuerda la fecha en que usted dice que se le cogió por el cuello respecto de un informe que usted hizo, en que puso que había trabajado horas después de las cuatro?

R. Yo le voy a decir una cosa . . .

P. ¿Usted recuerda la fecha exacta?

R. Yo no puedo recordar la fecha exacta, pero, sé que fue unas cuantas veces y tuve debates con los supervisores. Yo le hice preguntas a ellos, yo le dije que por qué era que a mí se me negaban esos derechos si trabajaba diez o catorce horas; *y en una ocasión cogí dos o tres informes y los llené con esas horas y el mismo supervisor me hizo romper ese informe y poner ocho horas de trabajo.*" (Énfasis suplido.)

No concurre en este caso el elemento de engaño (*deception*) que se exige para la aplicación de la defensa de impedimento.

■ 3. *Sierra* v. *Eastern Sugar Associates*, 71 D.P.R. 888 (1950), dispone del planteamiento sobre la adecuación de la prueba para establecer las horas adicionales trabajadas. Los testimonios ofrecidos y la prueba documental demuestra que el querellante realizó trabajo por el cual no se le compensó y hay suficiente evidencia que demuestra la cuantía y extensión de la labor realizada que permiten la inferencia justa y razonable del tribunal recurrido. Por otro lado, no se ofreció prueba alguna para controvertir este aspecto de la reclamación, pues la parte demandada descansó más bien en que había transmitido instrucciones terminantes para que no se trabajara en exceso de la jornada legal. Aun si se tratara de un resultado aproximado, fue razonable la discreción ejercitada. *Vélez* v. *Royal Bank*, 65 D.P.R. 967 (1946); *Lebrón* v. *P.R. Ry. Lt. & P. Co.*, 78 D.P.R. 683, 698 (1955).

■ 4. El último error aducido relacionado con una resolución sobre la contestación de unos interrogatorios, de haberse

cometido, no daría margen a la revocación pues no se demostró que perjudicara al recurrente.

*Se confirmará la sentencia enmendada* (²) *dictada por el Tribunal Superior, Sala de San Juan, en 15 de febrero de 1963.*

---

(²) Conforme a la Sec. 33 de la Ley de Salario Mínimo de 1956, 29 L.P.R.A. sec. 246e (Supl. 1963, pág. 178), sus disposiciones, entre las cuales se encuentra la que autoriza la concesión por concepto de compensación adicional de una cantidad igual a la que se haya dejado de satisfacer a un obrero, Sec. 30(a), 29 L.P.R.A. sec. 246b (Supl. 1963, pág. 175), no son aplicables a las personas empleadas por el Gobierno del Estado Libre Asociado, con excepción de aquellas agencias o instrumentalidades que operen como negocios o empresas privadas. Véase, *Tulier* v. *Autoridad de Tierras*, 70 D.P.R. 267 (1949).