GABRIEL ROSARIO y OTROS, querellantes y recurridos, *v.* AUTO-RIDAD DE TIERRAS DE PUERTO RICO, querellada y recu-rrente.

*Número:* R-68-47          *Resuelto:* 20 de mayo de 1969

*José Alberty Orona,* abogado de la recurrente; *Antonio Figueroa Rivera,* abogado de los recurridos.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo, Rigau y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

Un grupo de trabajadores de fincas de beneficio proporcional de la Autoridad de Tierras radicaron querella en contra de ésta en el Tribunal Superior, Sala de San Juan, en la que reclamaron:

| | | |
|---|---|---:|
| 1. | Beneficios proporcionales no pagados | $ 32,000 |
| 2. | Horas extras trabajadas y no pagadas a razón de $7,000 para cada uno de los 32 querellantes | $224,000 |
| 3. | Diferencia de salario por trabajo en caña quemada a razón de $3,000 para cada uno de los 32 querellantes | $ 96,000 |
| 4. | Tiempo extra durante el "tiempo muerto" (invernazo) durante 10 años a razón de $10,000 para cada reclamante | $320,000 |
| | TOTAL | $672,000 |

También reclamaron la penalidad, costas y honorarios de abogado.

Negada toda la reclamación y designado por el tribunal de instancia un comisionado especial para recibir la prueba de las partes y hacer conclusiones de hecho y de derecho, éstas estipularon, entre otras cosas, que la reclamación "por caña quemada se limitaba a la diferencia por caña quemada durante horas extras" y que se admitieran los análisis de las nóminas hechas por la recurrente en relación con cada uno de los recurridos sin que esto se interprete "como admisión hecha contra los recurridos."

Luego de varias vistas celebradas ante el comisionado especial, éste sometió un informe al tribunal de instancia en el cual hizo las siguientes conclusiones de hecho:

(a) En cuanto a la reclamación por horas extras:

"6. Que durante el período de zafra y durante el llamado tiempo muerto los querellantes tenían normalmente una jornada de trabajo de ocho horas diarias. Esta jornada de trabajo de ocho horas comenzaba casi siempre a las 7:00 a.m. y se extendía hasta las 11:00 a.m. Los obreros almorzaban de 11:00 a.m. a 12:00 M., hora ésta en que reanudaban sus trabajos y salían normalmente a las 4:00 p.m.

7. Todos los reclamantes negaron se les hubiere pagado hora extra alguna. Según su testimonio todos trabajaban de 6:00 a.m. a 6:00 p.m. de lunes a sábado, y en muchas ocasiones la mañana del domingo, salvo una hora para almorzar de 11:00 a.m. a 12:00 M. Los tickets de pago admitidos como prueba revelan que se les pagaron horas extras y así lo admitieron los querellantes desde la silla de los testigos al ser confrontados con los mismos.

8. De la prueba de la querellada consistente en los testimonios de los testigos Felipe Padilla Remigio, Víctor Pagán, Jenaro Martínez Díaz, José I. Barbosa, Juan Santana Franco, Máximo García Colón, Antonio Morales Franco y José Ángel Boria Gómez (listeros y administradores de fincas), se desprende que en ocasiones había omisiones y discrepancias por razón de alguna fracción de hora extra trabajadas y que no se le había apuntado. Algunas veces el trabajador prevalecía en su reclamación y en esas ocasiones la diferencia le era pagada al trabajador en la próxima semana figurándose en la nómina como *pago por omisión* en la semana anterior.

.    .    .    .    .    .    .    .    .

10. No era común que los querellantes trabajaran horas extras durante el llamado tiempo muerto, y las pocas horas extras trabajadas por algunos de los querellantes durante este período, según aparece de los extractos de nóminas y tickets de pago, les fueron satisfechas. El trabajo de siembra y cultivo en las fincas de beneficio proporcional, donde trabajan los querellantes se reduce sustancialmente tres meses después de la terminación de la zafra. Después de pasado estos tres meses la

mayoría de los pocos obreros que seguían trabajando en la finca raras veces trabajaban horas en exceso de ocho horas diarias."

En la conclusión Núm. 9 se indican cuantiosas horas extras trabajadas por los recurridos que les fueron debidamente compensadas por la recurrente.

Sin embargo en el párrafo III de sus conclusiones de derecho, informa el comisionado especial que:

"Compensación por horas extras trabajadas durante el período de 10 años sobre los cuales no recibieron compensación.

En nuestras conclusiones de hecho determinamos que once de los veinte y siete querellantes trabajaron horas extras sobre las cuales no habían recibido compensación adicional. En cuanto a los diez y seis restantes les fueron pagadas todas las horas extras trabajadas conforme dispone el convenio y la ley excepto el diferencial por horas extras trabajadas en caña quemada."

En la conclusión Núm. 18 aparecen las cantidades totales reconocidas por el comisionado especial como adeudadas por la recurrente a cada recurrido por razón de horas extras y diferencial en trabajo en caña quemada. Totalizan la cantidad de $11,525.08 más una cantidad igual por concepto de penalidad.

El tribunal de instancia dictó sentencia condenando a la recurrente a pagar dicha suma en la forma y manera prevista en el informe del comisionado especial más $7,606.55 de honorarios de abogado y, en adición dictaminó lo siguiente:

"Por resolución de 9 de diciembre de 1964 este Tribunal dispuso que los honorarios del Comisionado Especial serían pagados por la parte que resultase victoriosa. En cuanto a esté aspecto se deja sin efecto la antes citada resolución por entender el Tribunal que es contraria a la política pública que inspira a la legislación en materia de salarios en Puerto Rico, ya que ello equivaldría a reducir el salario al cual tienen derecho los obreros. Se dispone que tanto los honorarios del Comisionado Especial como los demás gastos incurridos durante las vistas sean pagados por la querellada, Autoridad de Tierras de Puerto Rico.

Se fijan los honorarios del Comisionado Especial Lcdo. Martín

Almodóvar Acevedo, en la suma de $5,500.00 y los de la taquígrafa, Sra. Olga Vázquez de Leal, en la suma de $588.00."

De los cuatro apuntamientos que la recurrente hizo en su recurso, sólo ha discutido los primeros tres. Concluimos que tiene razón en cuanto a los primeros dos, es decir, que no procedía la concesión de cantidad alguna por alegadas horas extras trabajadas y no compensadas y que la cuantía de honorarios de abogado es excesiva y debe reducirse de la suma de $7,606.55 a la suma de $2,000.00. El tercero impugna la determinación imponiéndole el pago de los honorarios del comisionado especial pues apunta que el tribunal de instancia incidió al dejar sin efecto una resolución anterior que daba efectividad a la estipulación de las partes de que tales honorarios los pagase la parte victoriosa. En cuanto a éste la recurrente no tiene razón no obstante concluir que no procedía dejar sin efecto la referida resolución.

1.—Consideramos primeramente el apuntamiento con respecto a horas extras.

Es cierto que la norma de este Tribunal ha sido sostener la apreciación de la prueba que hacen los jueces sentenciadores excepto en casos de error manifiesto, de clara arbitrariedad o de prejuicio o pasión y que las conclusiones ampliamente sostenidas por la prueba no serán alteradas por este Tribunal. *Soc. de Gananciales, Etc.* v. *Presbyterian Hosp.*, 88 D.P.R. 391, 411 (1963); *Álvarez* v. *Álvarez*, 77 D.P.R. 909, 916 (1955). No es menos cierto que en los casos civiles la afirmativa es una cuestión que deberá probarse y cuando la prueba es contradictoria, la decisión deberá pronunciarse de acuerdo con la preponderancia de la prueba; que los tribunales no están justificados en conceder reclamaciones de salarios que no sean debidamente probadas; que "Si bien las cortes deben proteger a los obreros o empleados en sus justas reclamaciones de salarios cuando se demuestra que el patrono no los ha satisfecho, no están justificados en conceder reclamaciones que no han sido debidamente proba-

330

das." Y que "al que reclama salarios por horas extras no satisfechos, incumbe demostrar mediante preponderancia de la prueba, no solo que realizó labor en exceso de la jornada ordinaria, si que también el número de horas extras por él trabajadas." *Marchán* v. *Eguen Otazabal*, 44 D.P.R. 408 (1933); *Vélez* v. *Royal Bank*, 65 D.P.R. 967 (1946); *Sierra* v. *Eastern Sugar Associates*, 71 D.P.R. 888 (1950).

■ Aunque el propósito principal de la Ley de Salarios es proteger al obrero, los tribunales no están justificados en conceder reclamaciones que no han sido debidamente probadas. *Vélez*, supra. Un empleado que inicia querella en reclamación de horas extras no satisfechas, está en la obligación de probar que realizó trabajo por el cual no se le ha compensado debidamente. La naturaleza en forma de remedio del estatuto y la gran política pública que el mismo encierra son, sin embargo, contrarios a hacer que esa obligación constituya un obstáculo imposible para el empleado. En tal situación, resolvimos en *Sierra*, supra, que un empleado ha cumplido con el requisito de ley que le impone el peso de la prueba, si demuestra que en realidad ha realizado trabajo por el cual no ha sido debidamente compensado *y si aduce suficiente evidencia que demuestra la cuantía y extensión de ese trabajo* como inferencia justa y razonable. La obligación de aducir prueba pasa entonces al patrono, quien deberá ofrecer evidencia respecto a la cantidad exacta de trabajo realizado o evidencia que controvierta la razonabilidad de la inferencia que ha de hacerse de la prueba ofrecida por el empleado. *Si el patrono deja de ofrecer semejante evidencia los tribunales pueden entonces conceder daños y perjuicios al empleado, aunque el resultado sean tan solo aproximado. Matías Rodríguez* v. *Adm. Programas Sociales*, 92 D.P.R. 200, 206 (1965).

■ Dijimos en *Lebrón* v. *P.R. Ry. Lt. & P. Co.*, 78 D.P.R. 683 (1955), que: "normalmente este Tribunal aceptará las conclusiones de hecho de un *master*, cuando éstas han sido confirmadas y adoptadas por el Tribunal Superior." Esto, no

obstante, no quiere decir que lo hagamos cuando llegamos al convencimiento de que un error claro y manifiesto se ha cometido.

La prueba de los recurridos consistió del testimonio de los querellantes al efecto de que trabajaban todos los días de 6 A.M. a 11 A.M. y de 12 P.M. a 6 P.M. y que nunca les pagaron una hora extra. La prueba demuestra que se les pagaron determinadas horas extras trabajadas durante tiempo muerto y en caña quemada durante la zafra, lo que así admitieron los recurridos al ser confrontados con los correspondientes comprobantes (*tickets*) de pago. También aparece que en ocasiones habían omisiones y discrepancias por razón de alguna fracción de horas extras trabajadas y que no se le habían apuntado al trabajador concluyendo el comisionado especial que el obrero prevalecía algunas veces y la diferencia era pagada en la semana siguiente, demostrando esto que los obreros no titubeaban en reclamar el pago de las horas extras que habían trabajado y no se les incluía en la paga de la semana en que las trabajaron, de manera que no es creíble que los obreros dejaran de hacer reclamaciones de este tipo con la debida prontitud y que, por el contrario, aceptaban las cantidades que reflejaban los comprobantes de pago firmados por ellos por temor a posibles represalias.

La prueba testimonial de la recurrente fue al efecto de que los querellantes trabajaban 6 días a la semana, de 7 A.M. a 11 A.M. y de 12 P.M. a 4 P.M.; que en las ocasiones en que se comenzó a las 6 A.M. se terminó a las 3 P.M.; que cuando trabajaron horas extras se les compensó. La prueba documental admitida por las partes consistente de un análisis de nóminas y de comprobantes de pago corroboró dicho testimonio. En su conclusión Núm. 9 el comisionado especial informa las horas extras trabajadas por y pagadas a un número específico de los recurridos. Las horas extras traba-

jadas durante el tiempo muerto también fueron pagadas según la conclusión Núm. 10 del comisionado especial.

En su conclusión Núm. 17 relaciona el comisionado especial los nombres de los querellantes a quienes se les adeudan cantidades específicas por horas extras trabajadas en caña quemada que fueron compensadas al doble del jornal convenido por trabajos en caña cruda cuando debieron compensarse al triple de dicho jornal ya que el jornal convenido para trabajo en caña quemada durante horas regulares era de vez y media el convenido para trabajo en caña cruda.

En su conclusión Núm. 18 concluye el comisionado especial que a once de los recurridos se les adeudan un número de horas extras trabajadas "en el movimiento de caña desde las fincas a la central o centros de concentración de caña." No se indica en esta conclusión los días, semanas, meses y zafras en que se trabajaron dichas horas extras ni hemos podido determinar del récord la forma y manera que utilizó el comisionado especial para determinar el número de horas extras acreditado por él a cada recurrente en dicha lista. En la lista de los querellantes que testificaron la cual aparece en la conclusión Núm. 3 del comisionado especial y del testimonio de los mismos aparece que:

1. Ángel Luis Martínez trabajó de 1954 a 1963 como operador de maquinaria agrícola en 7 de las fincas de la recurrente. Testificó que trabajó de operador de tractores "tirando caña para la central" y en el cultivo de la caña; empezaba a las seis de la mañana hasta las once; de once a doce almorzaba y empezaba a las doce hasta las seis o siete de la noche, los seis días de la semana. Durante la zafra trabajaba dos domingos al mes con el mismo horario. Nunca le pagaron horas extras. Confrontado con los comprobantes de pago admitió haber recibido las cantidades que en ellos se consignaban.

2. Francisco Marrero López, trabajó de 1954 a 1963 como llenador de caña con grúas, zanjero, reparador de

carreteras, operador de maquinaria agrícola y tiro de abono y semillas en las fincas Ingenio, Julia y Constancia. Se estipuló que declararía lo mismo que el anterior y se ofreció como evidencia los comprobantes de pago firmados por él. No aparece que trabajara en la conducción de caña.

3. Francisco Hernández Oliver, trabajó de 1954 a 1963, en el desyerbo y riego de caña, corte y llenador de caña en la finca Campanillas. Declaró que empezaba a las seis de la mañana y salía a las seis o siete de la tarde con una hora para almorzar, todos los días de la semana incluyendo el domingo. En zafra empezaba a las siete de la mañana. Firmaba los comprobantes de pago porque no cobraba si no firmaba. Recibió las cantidades que se consignaban en el sobre.

4. Miguel A. Rosario, trabajó de 1954 a 1963 en la siembra, corte y llenado de caña, desyerbo, reparación de caminos, zanjas, engrase de tractores, tiro de caña con maquinaria agrícola en las fincas Pájaros, Mucarabones y Cocos y Constancia. Declaró que empezó a trabajar para la Autoridad desde 1959. Empezaba a trabajar a las seis de la mañana y salía a las seis de la tarde con una hora para almorzar. El domingo descansaba. No le han pagado las horas extras. En tiempo muerto empezaba a las siete de la mañana. En 1958 trabajó de cortador de caña pero antes de ese año no trabajó porque estaba estudiando. No reclama por corte de caña porque los cortadores sólo trabajan ocho horas. Sólo trabajó horas extras durante la zafra y no se las pagaron nunca. En el comprobante de pago estaban expresadas las horas que había trabajado, el sobre tenía la cantidad que se figuraba en el comprobante y él lo firmaba.

5. Jorge Luis Marrero Reyes trabajó de 1956 a 1963 como montador de gomas, engrasador, llenado a mano, operador de tractores en la finca Julia y en la Unidad de Servicios que prestaba servicios a dicha finca. Declaró que empezaba a las seis de la mañana hasta las once, luego de doce a seis

de la tarde, seis días a la semana durante la zafra. El domingo no trabajaba. Nunca le pagaron las horas extras. En tiempo muerto "pegaba a las siete y salía a las cuatro." Las horas extras se las informaba a Juan Santana pero nunca se las pagaron. El dinero que recibía coincidía con lo que decía el comprobante de pago y él lo firmaba. Está seguro que no le pagaron horas extras.

6. William Vázquez Quiñones trabajó de 1954 a 1963 como zanjero, desyerbo y riego de caña, arado y operador de la maquinaria agrícola, en la finca Constancia. Declaró que era operador de tractores en la finca Ingenio, empezaba a las seis de la mañana hasta las seis de la tarde; "salía a las doce a almorzar hasta la una." Los seis días de la semana y el domingo lavaba el tractor de siete a once de la mañana, a veces. Nunca le pagaron horas extras. Siempre trabajó en la finca Ingenio. Se confrontó a los comprobantes de pago firmado por él donde se le estaba pagando horas extras y admitió haber recibido la cantidad ($92.31) aunque dijo que no se le había pagado horas extras. Admitió, sin embargo, que su jornal diario era de $5.80. No pudo explicar porque era que trabajando siempre las mismas horas a veces cobraba más y otras menos.

7. Natalio Navedo trabajó de 1955 a 1963 como cercador, desyerbo de caña, llenado de caña, riego de yerbicidas, lavado y mantenimiento de tractores y operador de equipo agrícola en las fincas Arizona, Los Cocos y la Unidad de Servicios del Toa. Declaró que trabajó de maquinista tirando caña de la pieza a la central y hacia la grúa. Siempre trabajó en zafras. Empezaba a las seis de la mañana hasta las seis de la tarde con una hora para almorzar. El domingo araba de seis a seis o lavaba el tractor. Nunca le pagaron horas extras. Trabajó también en tiempo muerto regando abono de seis a seis con una hora para almorzar y los domingos con el mismo horario. Empezó a trabajar en 1954. Araba quince cuerdas diarias. Los *tickets* los firmaba porque si no, no pagaban.

Confrontado con los comprobantes admitió que recibió las cantidades que decía el sobre pero no las que él pensaba recibir.

8. Víctor Padilla Remigio trabajó de 1954 a 1963 como operador de maquinaria agrícola, lavado de tractores, reparación de carreteras en la finca Ingenio. Declaró que trabajó de operador de tractor en la finca Ingenio desde 1954 en caña quemada. Empezaba a las seis de la mañana hasta las seis de la tarde y una hora para almorzar de doce a una. Trabajaba los seis días de la semana. Luego se estipuló que declararía lo mismo que el anterior. En contrainterrogatorio declaró que nunca le pagaron horas extras en 10 años. Los domingos trabajaba de siete a once de la mañana en zafra y en tiempo muerto. No sabe lo que se le debe por horas extras.

9. Hermenegildo Carmona Castro trabajó de 1954 a 1961 en el llenado de caña, riego, reparación de cercas, corte y tiro de caña, engrase de tractores, operación de arado y operador de maquinaria agrícola en la finca Campanillas. Declaró, luego de estipularse, que declararía lo mismo que el anterior, en contrainterrogatorio que empezó en 1954 en la finca Campanillas, como operador de maquinaria *Thompson*. Empezaba a las seis de la mañana. No sabe cuánto se echaba en cada viaje. Nunca le pagaron horas extras. Confrontado con los comprobantes de pago admitió haber recibido lo que allí se consignaba.

10. Sotero Ortiz Marrero trabajó de 1954 a 1963 en riego, llenando caña, corte de caña y operación de equipo en las fincas Constancia y Bárbara. Declaró que siempre trabajó en Constancia como cadenero. Luego se estipuló que declararía lo mismo que el anterior. No le pagaron horas extras. En contrainterrogatorio declaró que solo trabajó durante la zafra horas extras. Durante el tiempo muerto no trabajó horas extras. Firmaba el *ticket* porque si no firmaba no cobraba. Cuando firmaba, recibía la cantidad que se consignaba en el *ticket*.

11. Antonio Báez Cosme trabajó de 1955 a 1963 en movimiento de equipo, tiro de caña, riego de semillas y abono, y como operador de tractores en la finca Constancia. Declaró que trabajaba cortando caña y durante el invernazo era maquinista. Ya en el 1954 estaba trabajando para la Autoridad. Los domingos no trabajaba porque su religión se lo prohibía. Empezaba a trabajar a las seis de la mañana y salía a las seis de la tarde. Desde que la Autoridad empezó a quemar la caña se trabajó hasta las seis "Cuando las corporaciones . . . . Era más malo, se trabajaba más de las siete." Cuando recibía el *ticket* lo leía y lo entendía y sabía lo que estaba cobrando y por qué concepto. Confrontado con los comprobantes de pago alegó que la diferencia era "De acuerdo al método de ellos pagaron 47.67 que alegaban ellos era una bonificación que daban por encima, que sé yo . . . ." Declaró que recibía las cantidades que se consignaban en los *tickets* porque "A veces daban unos chavitos de bonificación". La cantidad que aparecía en el *ticket* era la misma que aparecía en el sobre.

Deducimos de lo expuesto que:

1. El testimonio de los recurridos de que trabajaban 12 horas diarias, seis o siete días a la semana y muchas veces de noche, durante 10 años consecutivos, es sumamente exagerado y se aparta de toda norma de trabajo conocida o concebible en el cultivo y cosecho de caña de azúcar. Más increíble aún resulta el que invariablemente todos los recurridos, quienes realizaban tareas tan distintas y variadas en distintos lugares, trabajasen tan uniformemente 12 horas diarias, seis o siete días a la semana durante 10 años consecutivos.

2. No existía el alegado temor de no exigir el pago de horas extras pues algunos de los recurridos admitieron que en ocasiones en que no se las pagaron las reclamaron y les fueron satisfechas.

3. La prueba del patrono, testifical y documental, en contraste con el testimonio uniforme de los recurridos antes

aludido, demostró la naturaleza y sitio de trabajo de cada uno de los recurridos y las horas trabajadas en cada faena así como las horas extras que laboraron y que les fueron pagadas.

4. Nada hemos encontrado en el récord que justifique la determinación del no pago de un número preciso de horas extras a cada uno de los once recurridos relacionados en la conclusión Núm. 18 del comisionado. Tampoco se indican los días y sitios en que tales horas extras fueron trabajadas. Es más, el récord demuestra que, de los recurridos, sólo cuatro probaron haber trabajado en la transportación de caña en adición a haber realizado otras faenas. Esta conclusión está en claro conflicto con otras que aparecen relacionadas en el informe del comisionado. La prueba previamente relacionada no sostiene ni justifica la referida determinación.

En vista de lo expuesto, concluimos que el tribunal de instancia incidió al concluir que cada uno de los referidos once recurridos trabajó un determinado número de horas extras que no le fueron compensadas. Por lo tanto, debe limitarse la sentencia a las cuantías y a los recurridos relacionados en la conclusión Núm. 17 del comisionado, el total de lo cual asciende a $6,711.73 más la penalidad de ley.

Considerada excesiva la cuantía de $7,606.55 de honorarios de abogado, debe reducirse la misma a la suma de $2,000.

Por el tercer error se impugna la parte de la sentencia que deja sin efecto la resolución del tribunal de instancia que dispuso que los honorarios del comisionado especial serían pagados por la parte victoriosa según así lo estipularon las partes en el litigio, ordenando dicho tribunal que la recurrente los pagase. No hay disposición alguna de ley que disponga que tales honorarios los pague el patrono como la hay en el caso de los honorarios de abogado. Tampoco hay disposición alguna que prohiba que en caso apropiado el juez

338

disponga su pago por cualquiera de las partes, según lo dispuesto en la Regla 41.1 de las de Procedimiento Civil. *Por lo tanto concluimos que bajo las circunstancias de este caso, el tribunal de instancia no incidió al imponer a la recurrente el pago de los honorarios del comisionado especial.*