RAMÓN RIVAS SEPÚLVEDA, ETC., ET AL., demandantes y recurridos, *v.* CONCEPCIÓN VELÁZQUEZ, ETC., ET AL., demandados y recurrentes.

*Número:* R-66-158        *Resuelto:* 16 de diciembre de 1969

*Faustino R. Aponte*, abogado de los recurrentes; *Julio C. Rivera, Luz E. S. de Virella* y *Eduardo E. Ortiz Quiñones*, abogados de los recurridos.

PER CURIAM: Ramón Rivas Sepúlveda y sus hijos Víctor, Benedicto, José y Benigno, radicaron querella en contra de

Concepción Velázquez y la Sucesión de Nicasio Betancourt para reclamar (1) salarios dejados de pagar por horas trabajadas por ellos en la vaquería de los recurrentes en exceso de ocho al día y de 48 a la semana; (2) la diferencia entre el salario prescrito por ley y el pagado a los recurridos; (3) vacaciones acumuladas y no pagadas, durante los años de 1955 a 1961; y (4) la mesada por despido injustificado.

La prueba consistió del testimonio de los recurridos, el de un cuñado, y otros tres testigos, el de la Sra. Velázquez, quien llevaba los libros de nóminas de la vaquería, y el de Ismael Betancourt, administrador de la vaquería de los recurrentes. Como prueba documental se ofreció y admitió, sin oposición, los libros de nóminas de la vaquería. Dicha prueba fue conflictiva.

El tribunal de instancia concluyó que:

1.—Ramón Rivas Sepúlveda vendió su casa en Yabucoa donde residía en 1955 y se trasladó entonces a la finca de los recurrentes donde trabajó como ordeñador, en trabajos de limpieza, corte y transportación de yerba para ganado, siembra de frutos menores y otras actividades.

2.—En febrero de 1958 el referido recurrido se trasladó a una casa cerca del establo de la vaquería. Desde entonces trabajó exclusivamente en faenas de la vaquería junto con sus hijos Víctor y Benedicto.

3.—Durante los años 1955, 1956 y 1957 este recurrido trabajó 7 días a la semana, 2 horas diarias en labores de la vaquería. Durante 1958 Ramón Rivas Sepúlveda comenzaba sus labores en la vaquería a las 4 de la mañana y las terminaba a las 4 de la tarde, excepto que tomaba una hora para almorzar. A partir de 1958 hasta el 15 de octubre de 1961 trabajó un promedio de 11 horas todos los domingos sin recibir compensación extra.

4.—Como desde mayo de 1955 hasta el 15 de octubre de 1961 dicho recurrido siempre recibió un jornal por hora en exceso del tipo legal fijado por los Decretos Mandatorios 18

y 27, no tiene derecho a compensación por diferencias de jornal. Durante dicho período trabajó 7,419 horas extras que no le fueron compensadas por lo menos a dos veces el tipo de salario legal. Durante el período de mayo de 1955 a diciembre 31 de 1956 trabajó 1,220 horas extras no compensadas al tipo legal de 28¢ la hora. Por este concepto tiene derecho a la suma de $341.60. De enero de 1957 a diciembre de 1959 trabajó 730 horas extras no compensadas a razón de $2.50 que como jornal devengaba. Por tal concepto tiene derecho a la suma de $226.30.

A Ramón Rivas Sepúlveda no se le compensaron 95 días de vacaciones acumuladas desde enero de 1955 a octubre de 1961. Tiene derecho a compensación por 73 1/2 de vacaciones de mayo 1955 a 8 de abril de 1960 a razón de 22¢ por hora luego de deducir las cantidades recibidas por concepto de vacaciones. De 9 de abril de 1960 a 15 de octubre de 1961 acumuló 21 1/2 días de vacaciones que deben compensarle al tipo de 37¢ la hora luego de deducir las cantidades recibidas por concepto de vacaciones.

Ramón Rivas Sepúlveda tiene derecho a recibir por horas extras trabajadas y vacaciones acumuladas y no pagadas, la suma total de $4,954.62. [1]

5.—Víctor Rivas trabajó de jardinero de la familia Betancourt hasta agosto de 1959 cuando comenzó a trabajar en la vaquería desde las 4 de la mañana a 4 de la tarde menos una hora para almorzar, los 7 días de la semana. Tiene derecho a recibir por horas extras y vacaciones acumuladas y no pagadas la suma de $2,211.20.

---

[1] No aparece de las conclusiones del tribunal de instancia el proceso aritmético completo que justifica este resultado. Es necesario que los tribunales de instancia sean más precisos en sus conclusiones en casos como éste, relacionando en detalle los fundamentos y los cálculos de (a) cualquier diferencial de salario no pagado cuando se concluya que se pagó un salario menor al legal; (b) de las horas extras no compensadas y el cálculo matemático preciso de la cantidad total adeudada.

6.—Benedicto Rivas comenzó a trabajar en la vaquería en febrero de 1958. Trabajaba una jornada igual a la de Víctor. No trabajó en la vaquería y sí de jardinero durante la segunda mitad de 1959 y durante el año 1960, excepto 3 horas diarias en el ordeño, trabajo que no le fue compensado al tipo establecido por ley pues solo se le pagaba $5.00 semanales. Por diferencias de jornal, horas extras y vacaciones acumuladas y no pagadas, tiene derecho a recibir $1,526.14.

7.—Ni José ni Benigno Rivas Delgado trabajaron en la vaquería.

8.—Los recurridos abandonaron el trabajo sin que los recurrentes los despidieran.

Apuntan los recurrentes que el tribunal de instancia incidió (1) al no dar crédito a las nóminas del patrono; (2) al fijar fecha en la cual Ramón Rivas Sepúlveda comenzó a trabajar en la vaquería; (3) al computar las horas extras de dicho recurrido; (4) al fijar el tiempo que Víctor Rivas trabajó en la vaquería; y (5) al determinar que Benedicto Rivas trabajó en la vaquería.

En *Rosario* v. *A. de T.*, 97 D.P.R. 324 (1969) y *Campos de Encarnación* v. *Sepúlveda*, 94 D.P.R. 74, 81 (1967), resumimos las normas de apreciación de la prueba en casos como el que nos ocupa.

1-2-3. Consideramos los primeros tres apuntamientos conjuntamente pues se refieren a la reclamación de Ramón Rivas Sepúlveda.

Concluyó el tribunal de instancia que "la información que de dichas nóminas surge no nos ha merecido entero crédito". Da como ejemplo el testimonio de la Sra. Velázquez, quien preparaba dichas nóminas, de que "hizo figurar en ellas al querellante Víctor Rivas Delgado como trabajando solamente 6 horas por razón de que . . . era muy joven para trabajar la jornada completa de 8 horas. Tal explicación, por lo ingenua, no nos ha merecido crédito."

Las nóminas en cuestión fueron admitidas en evidencia sin objeción. No fueron impugnadas. No aparece en el récord razón alguna porque se excluyese de las nóminas hasta fines de julio de 1956 a Ramón Rivas Sepúlveda cuando aparecen en las mismas el nombre de unos cuarenta otros trabajadores. La prueba no revela indicio alguno que explique el por qué se había de realizar tal omisión. Concluimos, por lo tanto, que en efecto Ramón Rivas Sepúlveda comenzó a trabajar en la finca de la familia Betancourt en 4 de julio de 1956 cuando por primera vez aparece en las nóminas de los recurrentes.

Concluyó el juez que desde el 1955 hasta febrero de 1958 dicho recurrente trabajaba en faenas de la vaquería y otras labores 11 horas diarias, siete días a la semana de 4 de la mañana a 4 de la tarde. Se basó en el propio testimonio del recurrido. Las nóminas demuestran que al comenzar a trabajar en la referida finca en julio de 1956 trabajaba en la siembra y cultivo de frutos menores y en hierba, en parte como medianero, como así concluyó el tribunal de instancia, con derecho a vivienda gratis. No se le acreditaron horas extras. No aparece trabajando en la vaquería hasta el 1 de febrero de 1958 desde cuando se le acreditan 8 horas diarias de trabajo durante 6 días a la semana, marcándose 4 horas en el séptimo día como horas extras. Se le pagó a la razón de $2.50 diarios durante febrero de 1958. En marzo de ese año se le aumentó el jornal a $18 semanales y se le pagaron $33 por concepto de vacaciones. Dicho jornal fue aumentado a $23 semanales en 1ro. de agosto de 1959. De las nóminas de 1959 aparece en la hoja de Ramón Rivas Sepúlveda que desde el 3 de octubre el jornal de Rivas se redujo a $18 semanales; que en 12 de septiembre el hijo Víctor pasó a la vaquería y que "suspendido Benito pasó a doméstico." El horario de Rivas siguió igual. Se le pagaron $46 por las vacaciones de ese año. La nómina de 1960 lee que estaba "autorizado a trabajar no más de 8 horas diarias". A eso se añade en la nómina de 1960 "8 solamente los domingos" y "doble cuando las trabaje". Se

le pagaba a razón de 35¢ la hora y a 40¢ la hora por las 4 horas que se le acreditaron por los domingos. Así siguieron las entradas correspondientes a Rivas Sepúlveda hasta el 7 de octubre de 1961 en que cesó.

De lo expuesto concluimos que:

(a) Ramón Rivas Sepúlveda no comenzó a trabajar en la finca de los Betancourt en 1955 sino en julio de 1956. No fue hasta el 1ro. de febrero de 1958 que comenzó a trabajar en la vaquería. Antes trabajaba en el cultivo de frutos menores y hierba. El propio Rivas testificó que pasó a la vaquería en esta fecha, junto con sus hijos, cuando los obreros que allí trabajaban cesaron. No es creíble su testimonio que trabajaba en la vaquería desde 1955, por lo menos de 4 a 6 de la mañana porque (1) las nóminas no lo revelan; (2) estos obreros realizaban el trabajo de la vaquería; (3) Rivas ocupaba hasta febrero de 1958 una casa en el campo lejos de la vaquería, más en armonía con su faena de cultivo.

(b) De manera que es razonable deducir que hasta el 1ro. de febrero de 1958 no trabajó horas extras pues la labor agrícola no lo exigía y no aparecen acreditadas en nóminas, mientras que de esa fecha en adelante se le acreditaron horas extras por el trabajo de los domingos.

(c) Convenimos con el tribunal de instancia que las faenas de Rivas en la vaquería, debido a su naturaleza y la necesidad de ordeñar las vacas al amanecer, comenzaba a las 4 de la mañana de cada día y continuaba hasta las 4 de la tarde. Rivas testificó que tomaba la hora de 11 a 12 para almorzar. Ismael Betancourt testificó que el trabajo de la vaquería comenzaba a las cuatro de la mañana; que el ordeño terminaba a las 6 y entonces "hacían limpieza, cortaban pasto y le llenaba las canoas a los becerros." A las 9 de la mañana "se quedaban en receso." Como se trataba de una producción de unos 120 litros de leche por la mañana, según Rivas, es creíble el testimonio de Ismael Betancourt al efecto de que por la mañana se manejaban de 20 a 25 vacas y 15 por la

tarde. Por lo tanto, tomando en consideración lo expuesto en las nóminas y el referido testimonio de las partes, debemos concluir que en la vaquería en cuestión se trabajaba 5 horas por la mañana de 4 a 9 y 4 por las tardes, de 12 a 4, es decir, Rivas trabajaba *una hora extra diaria no acreditada en las nóminas.* En cuanto a los domingos, Rivas testificó que trabajaba las mismas horas que los demás días. De manera que *durante los domingos trabajó 9 horas que por ser horas extras había que pagarlas a tiempo doble. Como le pagaron 8 horas por el trabajo de ese día a tiempo sencillo, se le deben 8 horas a tiempo sencillo y una doble durante cada domingo desde el 1ro. de febrero de 1958 hasta que cesó en el trabajo el 7 de octubre de 1961.* Por supuesto que a los efectos de calcular lo que es le adeuda por horas extras no se tomará en cuenta el período que no trabajó debido a enfermedad y durante el cual lo sustituyó su hijo mayor quien recibió la compensación correspondiente por sus servicios.

(d) Como Rivas no trabajó en la vaquería hasta el 1958, su derecho a vacaciones comenzó desde este año. Convenimos con el juez de instancia que *se le adeudan las vacaciones que acumuló durante el 1961, siendo éstas las únicas vacaciones que se le adeudan.*

4. Veamos ahora la reclamación de Víctor Rivas Delgado, joven de 18 años de edad en el 1958. Testificó que comenzó a trabajar en la vaquería en agosto de 1959. Como concluyó el tribunal de instancia, trabajó anteriormente exclusivamente como jardinero. La nómina demuestra que comenzó a trabajar en la vaquería en 12 de septiembre de 1959. Como no existe razón para haberlo omitido de la nómina durante un mes cuando en las mismas aparecen numerosos otros obreros, concluimos que es más confiable la segunda fecha indicada como la de su comienzo en el trabajo en la vaquería. Convenimos en que trabajó un horario igual al de su padre. Esto se desprende no tan sólo de su propio testimonio sino del de Ismael Betancourt. En este extremo las

nóminas no reflejan la verdad al no acreditarle hora alguna de trabajo al principio y más tarde sólo 6 horas de trabajo al día. *Tiene derecho, por lo tanto, a que se le pague una a tiempo doble diaria durante todo el tiempo que trabajó en la vaquería. Por el trabajo de los domingos se le adeuda el salario correspondiente a las horas trabajadas a tiempo doble, menos lo que recibió como salario por las horas que se le acreditaron en las nóminas por el trabajo que realizó los domingos. Tenía derecho a vacaciones durante 1959 pues acumuló más de 120 horas trabajadas en la vaquería durante cada uno de los últimos 3 meses de ese año. Se le pagaron las de 1960 pero no las de 1961.*

5. El recurrido Benedicto Rivas, joven de 16 años de edad, en 1958, no aparece en las nóminas de los recurrentes, excepto que en la hoja de Ramón Rivas Sepúlveda en la nómina del 3 de octubre de 1959 aparece una anotación que dice: "De Sept. 12—Víctor vaquería suspendido Benito pasó a doméstico." Con respecto a esta anotación el testimonio de Ismael Betancourt y el de Concepción Velázquez fueron los siguientes:

Ismael Betancourt testificó, en relación con la referida nota que "Suspendido, Benito pasó a doméstico. Víctor fue el que suspendió."

La Sra. Velázquez testificó que en efecto la nota en cuestión quería decir "que se suspendió a Víctor de oficios domésticos y en sustitución suya se trajo a Benedicto. Entonces a Víctor se puso a trabajar en la vaquería con su papá."

Como previamente habían declarado que Benedicto nunca trabajó en la vaquería y sí en oficios domésticos, la explicación anterior es que en 12 de septiembre de 1959, Víctor, que hasta entonces trabajaba en oficios domésticos, fue suspendido de ese empleo, sustituyéndolo Benedicto en el mismo, y que entonces Víctor pasó a trabajar en la vaquería, como lo reflejan las nóminas.

Por el contrario, Ramón Rivas Sepúlveda testificó que al cesar en el trabajo los últimos 2 de los 3 vaqueros que realizaban las labores de la vaquería, a él lo trasladaron con su familia a una casa junto al establo para hacer el trabajo de la vaquería "junto con sus muchachos". Víctor testificó que trabajó junto a su padre las mismas horas que éste en las labores de la vaquería conjuntamente con sus hermanos desde que comenzó a trabajar allí.

El récord revela, y así lo confirmó el tribunal de instancia, que antes de septiembre de 1959, Víctor trabajó exclusivamente como jardinero y que fue en septiembre de 1959 que comenzó a trabajar en la vaquería. Benedicto testificó que empezó a trabajar en la vaquería con su papá en 1958, las mismas horas diarias que éste, a un salario de $5 semanales; que en 1959 "no trabajaba tampoco en la vaquería . . . . No recuerdo por qué fue cuando nos cambiaron para el jardín" siguió ganando los $5 semanales. Testificó que en el año 1960 trabajaba "con ellos en el jardín". Luego dice que durante los años 1958, 1959 y 1960 le "dedicaba" los domingos a la vaquería; que en el año 1960 trabajaba todos los días de 4 a 7 de la mañana en la vaquería, luego en el jardín hasta las 11, de 12 a 1 de la tarde otra vez en la vaquería y entonces volvía al jardín. En el 1961 dice que trabajaba "En el jardín todavía". Más tarde testificó que no recordaba haber trabajado durante ese año de 4 a 7 de la mañana y de 12 a 1 de la tarde en la vaquería. La repregunta sobre este particular fue así:

"P. ¿Testigo, debo entender que desde que usted comenzó a trabajar en el 1958 hasta que usted dejó el trabajo o lo despidieron, hasta que cesó en su trabajo, usted trabajaba en las dos cosas, en la vaquería y en el jardín?

TESTIGO:

R.—Sí, señor.

P.—¿Entonces, siempre trabajó en el jardín?

R.—No, porque yo trabajé en la vaquería.

P.—¿En las dos cosas?

R.—Sí, en las dos cosas.

P.—¿Trabajaba unas horas por la mañana en la vaquería y después se iba a trabajar al jardín?

R.—De siete a once.

P.—¿Y por la tarde?

R.—Estaba en la vaquería de doce a una.

P.—¿Y después?

R.—Me iba al jardín otra vez.

P.—¿Eso fue durante todos los años?

R.—No, porque trabajé año y pico en la vaquería nada más.

P.—¿En que año fue eso?

R.—En el '58.

P.—¿Entonces, en el '58 trabajó en la vaquería nada más?

R.—Sí, señor.

P.—¿Entonces, no trabajó en el jardín?

R.—No. En el '58 no."

Concluimos de lo expuesto que *Benedicto Rivas* no rindió una faena completa diaria en la vaquería en cuestión. Sin embargo, el tribunal de instancia estuvo justificado en concluir que mientras trabajaba como jardinero, desde septiembre de 1959, *trabajó tres horas diarias durante siete días de cada semana en la vaquería que no le fueron compensadas al tipo establecido por ley por lo. que tiene derecho a recibir compensación por concepto de diferencias de salario.* Como trabajaba de 7 a 11 de la mañana y de 12 a 4 de la tarde durante los 7 días de cada semana, *tiene derecho a recibir compensación a tipo doble por las horas trabajadas durante los domingos. No tenía derecho a vacaciones* ya que trabajaba menos de las 120 horas por mes en la vaquería como requieren los decretos mandatorios aplicables. Fundamentamos estas conclusiones en las siguientes circunstancias:

1.—Benedicto Rivas no aparece en las nóminas de la finca de los recurridos. La única referencia a este joven es la nota en la hoja de Ramón Rivas en la nómina de octubre

de 1959 la cual es vaga y confusa. La explicación dada por los recurridos en su testimonio nos parece la más lógica y razonable dadas las circunstancias entonces prevalecientes, o sea, que Víctor Rivas quien trabajaba como jardinero, cesaba como tal y pasaba a trabajar en la vaquería mientras que Benedicto, entonces un joven de 16 años, desde ese momento sustituía a su hermano Víctor en el empleo de jardinero. No nos parece real y práctico y por lo tanto, no nos parece creíble, que si Benedicto ya estaba entrenado en el trabajo de la vaquería fuese trasladado a jardinero y Víctor que era esto último, y que presumiblemente nada sabía de la vaquería, sustituyese a Benedicto en su faena de ordeñador y vaquero.

2.—Benedicto ganaba un jornal de $5 semanales, obviamente muy por debajo de lo que los recurridos pagaban por el trabajo en la vaquería. Es más, por trabajo en la vaquería pagaban los recurridos salarios por encima del mínimo. Esto parece indicar que se le pagaban los $5 semanales por faena de tipo doméstico y no agrícola. No aparece razón alguna por qué se pagase a Benedicto tan poco por el mismo trabajo en la vaquería por el cual a Víctor se le pagaba a razón de 35¢ la hora durante los años 1960 y 1961, o sea, que mientras a Víctor se le pagaba $16.80 semanales, a Benedicto sólo se le pagaba $5 por el mismo trabajo.

3.—Víctor era dos años mayor que Benedicto. Era razonable que empezase a trabajar en faena agrícola antes que éste y que éste comenzase a trabajar en algún oficio doméstico primero como lo hizo aquél.

*Por las razones indicadas, debe devolverse el caso al tribunal de instancia con instrucciones que, a la luz de las anteriores determinaciones, vuelva a calcular el salario adeudado a los recurridos y en tal virtud enmiende la sentencia dictada en este caso en 9 de mayo de 1966.*

El Señor Juez Presidente y los Jueces Asociados Señores Rigau y Dávila no intervinieron. El Juez Asociado Señor Pérez Pimentel concurre en el resultado.