Fernando Sierra Berdecía, Comisionado del Trabajo de Puerto Rico, en representación y para beneficio de Evaristo García Rivera y Flor Rivera Mestre, demandante y apelante, *v.* Eastern Sugar Associates, demandada y apelada.

Núm. 10270.—*Sometido:* Noviembre 6, 1950. *Resuelto:* Noviembre 28, 1950.

*Ramón Cancio, Joaquín Gallart Mendía* y *Augusto Palmer,* abogados del Departamento del Trabajo y a su vez del apelante; *E. T. Fiddler, José G. González, Tomás I. Nido* y *Andrés Guillemard,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

Evaristo García Rivera y Flor Rivera Mestre radicaron ante la Corte de Distrito de Humacao demanda en reclamación de salarios contra Jesús María Rivera. Visto el caso en sus méritos, dicha corte dictó sentencia declarándola sin lugar, fundada principalmente en que la prueba no demostraba que los reclamantes hubiesen trabajado para el demandado las horas extras por ellos reclamadas, y sí que las habían trabajado para la Eastern Sugar Associates (A Trust).[1]  Diez días más tarde el Comisionado del Trabajo, en representación y para beneficio de dichos obreros, instó una querella similar contra la Eastern. Alegó en esencia que Evaristo García Rivera y Flor Rivera Mestre trabajaron para la querellada, en calidad de operador de grúa y estibador de vagones, respectivamente, en una grúa que la que-

---

[1] De ahora en adelante designaremos en el curso de esta opinión a la demandada meramente como la Eastern.

rellada operaba en su industria de producción de azúcar, en el sitio conocido por Irurena, de Humacao, desde el 6 de febrero de 1946 al 8 de mayo del mismo año; que durante seis días a la semana dichos obreros rendían una labor de doce horas diarias, o sea de cuatro horas sobre la jornada máxima de ocho horas diarias que permite la ley; que los citados obreros recibían en el trabajo especificado una compensación de 28.12 centavos por cada hora regular de trabajo; que García Rivera trabajó un total de 292 horas extras y Rivera Mestre un total de 228 horas extras, por las cuales ninguno de ellos jamás ha recibido compensación; y que la querella se formula al amparo del Decreto Mandatorio Núm. 3 de la Junta de Salario Mínimo de Puerto Rico y acogiéndose al procedimiento especial establecido por la Ley 10 del 14 de noviembre de 1917 ( (2) pág. 217). En la súplica se solicita se dicte sentencia condenando a la Eastern a pagar a los referidos obreros el importe de las horas extras trabajadas, a un tipo doble de compensación, más la penalidad adicional fijada por la ley.

Contestó la querellada aceptando que los referidos obreros habían trabajado para ella en la indicada grúa durante la zafra del año 1946 y en las fechas alegadas; negó los demás hechos de la querella y alegó afirmativamente que dichos obreros trabajaron para ella tan sólo durante ocho horas regulares al día y que si trabajaron más de esas horas en cualquier día lo hicieron para beneficio y a petición de alguna otra persona. Alegó asimismo en su contestación, por información y creencia, que los reclamantes trabajaron en el manejo y trasbordo de la caña del colono Jesús María Rivera Donato, y que la reclamación que ahora hacen a través de su querella la dirigieron inicialmente contra dicho colono, por considerar ellos que era a él a quien correspondía pagarles, no siendo hasta que dicho colono se negó arbitrariamente a satisfacerles dichas horas que recurrieron en contra de ella.

Trabada así la contienda fué el pleito a juicio, luego de celebrado el cual la Corte de Distrito de Humacao, por voz de un juez distinto a aquél que declaró sin lugar la demanda interpuesta por estos mismos reclamantes contra Jesús María Rivera, dictó sentencia al efecto de que las horas extras que diariamente trabajaron los reclamantes lo fueron a solicitud y para beneficio de Jesús María Rivera; que siendo Rivera meramente un colono de la Eastern y no un agente, intermediario, representante, o empleado de ésta, sus actos no la obligaban; y que la querellada no era responsable de las horas adicionales trabajadas por los obreros reclamantes, por haber sido dichas horas adicionales trabajadas a solicitud y para beneficio de un patrono distinto, o sea de Jesús María Rivera, y contra la voluntad expresa de la querellada. Indicó además el tribunal inferior que si bien la prueba demostraba que los reclamantes habían trabajado un número de horas adicionales sobre la jornada máxima de ocho horas que permite la ley, durante seis días a la semana, con salario de $2.25 por cada ocho horas de labor, sin embargo, como el número total de horas adicionales no podía ser determinado por la prueba aducida, los tribunales no estaban justificados en conceder reclamaciones de salarios que no fueran probadas en la forma debida. Declaró, en su consecuencia, la querella sin lugar.

Contra la sentencia así dictada apeló el querellante. Señala en apoyo de su recurso que el tribunal a quo erró (1) al resolver que la querellada no es responsable del pago del salario correspondiente a las horas trabajadas por los reclamantes en exceso de la jornada legal de ocho horas y (2) al resolver el caso sin estimar el tiempo trabajado por los obreros en exceso de la jornada regular de ocho horas. Los errores así señalados nos obligan a determinar si la Corte de Distrito apreció correctamente la prueba que tuvo ante sí, y por ende si se estableció: (a) que las horas extras trabajadas por los mencionados obreros lo fueron por cuenta y para beneficio de la querellada; y (b) el número de horas extras trabajadas por los reclamantes.

La prueba testifical aducida en favor de los obreros consistió en el testimonio de Evaristo García Rivera, Dionisio Rivera, Enrique Torres Irizarry, José Lugo Matta, Juan Colón Salcedo y Alejandro de León. A fin de que se vea con la mayor claridad el alcance de la evidencia ofrecida, haremos una ligera síntesis de la declaración de cada uno de ellos:

*Evaristo García Rivera* trabajó durante la zafra de 1946 como operador de grúa en el sitio conocido por Irurena, perteneciente a la Eastern, 12 horas al día, empezando su labor a las 7 de la mañana y terminándola de 8 a 9 de la noche. Había veces que salía a las 10 de la noche. Trabajaba 6 días a la semana por un salario de $2.25 por 8 horas. Don Pepe Lugo, el administrador, lo sabía. Cuando ya era demasiado tarde Lugo mandaba un empleado a buscarlo. Le decían que "la Eastern pagaba 8 horas. Que ya eso era trabajar de más." La grúa y el motor que la movía pertenecían a la Eastern, teniendo ésta además el *control* del motor. Cuando terminaba su labor iba a la oficina de la Eastern a informar las tablillas de los *trucks* y los paquetes cargados, y a recoger la orden de la gasolina, recibiéndolo allí Don Alejandro, el oficinista de la Eastern. Ésta pagaba los jornales del testigo, su nombre figuraba en las nóminas de ella y el seguro de ésta los cubría. Los colonos tenían asignadas 60 toneladas de caña al día, según le informó Jesús María Rivera. Estableció reclamación de salario contra Rivera por las horas extras, debido a que éste fué quien lo llevó al trabajo, pero no sabe qué transacción existía entre Rivera y la Eastern. Rivera fué quien le dijo que trabajara las horas extras. Él expuso a la Eastern la razón por la cual trabajaba más de 8 horas, pero ésta no tomo decisión alguna. (²)

---

(²) Se estipuló que el obrero Flor Rivera Mestre declararía lo mismo que había declarado Evaristo García Rivera, así como que Juan Colón Salcedo, José Lugo Matta y Alejandro de León serían utilizados como testigos de ambas partes.

*Dionisio Rivera* es hijo del colono Jesús María Rivera. Los dos obreros reclamantes trabajaron para la Eastern en la Irurena. Éstos cargaban caña de su padre y de otros colonos más. Trabajaron horas extras allí algunos días. Los obreros los seleccionaba el colono por orden de la Eastern y los salarios de aquéllos los pagaba la querellada. La labor de ellos la supervisaban los empleados de la Eastern; y la responsabilidad del acarreo de las cañas, desde el punto de entrega hasta la central, era de la Eastern. Él nunca dió órdenes a dichos obreros ni exigió a éstos que trabajaran más de 8 horas.

*Enrique Torres Irizarry* es Supervisor de Investigaciones de Leyes del trabajo e informó una reclamación por horas extras hecha por García Rivera y por Rivera Mestre.

*José Lugo Matta* era Jefe de la Segunda División de Campo de la Eastern durante la zafra de 1946. Conoce a Evaristo García Rivera y a Flor Rivera Mestre y le consta que uno trabajaba como motorista y el otro como estibador de vagones. La Eastern pagaba a estos obreros por llenar las cañas del colono Jesús María Rivera, aunque puede que en algunas ocasiones ellos trabajaran también en cañas de otros colonos. Veía trabajar a dichos obreros y notaba que algunas veces éstos trabajaban después de las 4 de la tarde. Preguntado ¿y a las ocho de la noche?, contestó: "Alguna vez quizás". Les llamó la atención varias veces y les dijo: "que ellos sabían que tenían que trabajar solamente 8 horas. Que la compañía no podía pagar más de 8 horas . . . . la compañía les pagaba por 8 horas diarias de trabajo". La grúa y el motor pertenecían a la Eastern y ésta proveía el combustible utilizado por el motor. Preguntado además si los obreros "habían tenido instrucciones específicas en cuanto a las horas", respondió: "No, señor". Manifestó además que García Rivera y Rivera Mestre aparecían en las nóminas de la Eastern y que el seguro de ésta cubría a dichos obreros. Preguntado, asimismo: "al usted conocer que estos empleados trabajaban horas extras, ¿qué medidas tomó para

evitarlo?" Replicó: "Se lo dije, que ellos no podían trabajar más de 8 horas y que si las trabajaban era convenio particular allá de ellos y el colono. Pero que nosotros no teníamos que ver en absoluto con ese asunto". También testificó que la acción de la Eastern se limitó a advertir a los obreros que no debían trabajar más de 8 horas y que "nosotros siempre tenemos el buen deseo de cooperar con los colonos y si los obreros querían cooperar con los colonos nosotros no podíamos evitarlo".

*Juan Colón Salcedo* era listero de la Eastern durante la zafra de 1946 y sabe que García Rivera y Rivera Mestre en algunas ocasiones trabajaron más de 8 horas. A veces trabajaban 12 horas, mas no sabe a ciencia cierta cuántas horas extras trabajaban. Los obreros le dijeron que era un arreglo con el colono y que ellos se entendían con éste.

*Alejandro de León* era encargado de la oficina de cultivo de la segunda División de Campo y por las mañanas ordenaba que se despachara a los obreros reclamantes cierta cantidad de gasolina.

También se ofreció y fué admitida en evidencia copia certificada de la Resolución aprobada por la Comisión de Servicio Público en 6 de agosto de 1946, al efecto de que el arrastre y arrimo de las cañas de los colonos desde la grúa hasta la central era responsabilidad exclusiva de la querellada.

Hasta ahí la prueba aducida. Como resultado de su apreciación, repetimos, la corte resolvió que debía declarar sin lugar la querella por no haberse demostrado que las horas extras fueron trabajadas por cuenta y para beneficio de la Eastern y por no haberse probado el número de horas extras trabajadas.

■■ Reiteradamente hemos dicho que la apreciación de la prueba hecha por un tribunal inferior no será alterada por nosotros a no ser que se nos convenza de que al hacerlo éste cometió manifiesto error o actuó movido por pasión, prejuicio o parcialidad. Hemos leído la transcripción de evi-

dencia con el mayor detenimiento, fría y serenamente. La hemos reseñado más arriba a grandes rasgos. Esa lectura nos ha convencido de que fué un error manifiesto del tribunal a quo llegar a las conclusiones a que llegó. La prueba a nuestro juicio demuestra, sin lugar a dudas, que los reclamantes trabajaron para la querellada en exceso de la jornada de 8 horas a que hace referencia el inciso 4 (a), párrafo A, del Por Tanto del Decreto Mandatorio Núm. 3 de la Junta de Salario Mínimo, "fijando.salarios mínimos, horas máximas de labor y condiciones de trabajo que deberán prevalecer en la industria del azúcar en Puerto Rico," promulgado el 27 de febrero de 1943; (³) que la Eastern tenía pleno conocimiento del hecho de que dichos obreros trabajaban más de 8 horas y que si bien Lugo Matta, oficial de ella, informó a los obreros que no debían trabajar más de 8 horas y que la Eastern no respondería de cualquier trabajo realizado en exceso de ese número de horas, sin embargo, los obreros continuaron trabajando las horas extras con la anuencia y aquiescencia de la Eastern, permitiendo ésta que en exceso de la jornada de 8 horas se utilizara su grúa, su motor y el combustible para éste por ella suministrado, manifestando además dicho oficial, según ya hemos indicado que "nosotros siempre tenemos el buen deseo de cooperar con los colonos". Bajo las circunstancias reseñadas es inevitable la conclusión de que los obreros reclamantes trabajaron las horas en exceso por ellos reclamadas, no para otro patrono, sino para la querellada.

■ Conforme se dijo en *Lenroot v. Interstate Bakeries Corporation*, 146 F.2d 325 (1945), "según indicó el Juez Cardozo en el caso de *Pueblo v. Sheffield Farms-Slawson-Decker Co.*, 225 N.Y. 25, 121 N.E. 474, 476, 'el precepto del estatuto está dirigido al patrono y éste no puede evadirlo delegando su responsabilidad en otros. Incumbe al patrono in-

---

(³) El Decreto Mandatorio Núm. 3 fué promulgado en armonía con las disposiciones de la sección 6 de la Ley núm. 8 de 5 de abril de 1941, de Salario Mínimo, ((1) págs. 303, 311).

quirir sobre las condiciones prevalecientes en el negocio. No se libra de ese deber por el hecho de que la amplitud de éste le impide tener supervisión personal del mismo y le obliga a confiar en subalternos. Debe entonces vencer o caer con aquéllos que designa para que actúen por él . . . . debe resolverse que el deber es personal, o anularse el estatuto . . . Deben ser muy raros los casos en que un trabajo prohibido por el estatuto pueda realizarse dentro de la planta física de una industria y no tenerse conocimiento de tal trabajo o eludirse las consecuencias del mismo'." (⁴) Las palabras que anteceden, de aplicación a causas criminales, son igualmente aplicables cuando el patrono que ha infringido el estatuto trata de evadir responsabilidad civil. El primer error señalado fué, por ende, cometido.

■ Por otra parte, del testimonio de Evaristo García Rivera (⁵) claramente se desprende que él trabajó para la querellada 12 horas diarias durante 6 días a la semana. Su testimonio prevalece incontrovertido en los autos. Por tanto, habiendo aceptado la querellada la alegación segunda de la querella al efecto de que Evaristo García Rivera y Flor Rivera Mestre trabajaron para ella en calidad de operador de grúa y estibador de vagones, respectivamente, en el sitio conocido por Irurena, desde el 6 de febrero de 1946 al 8 de mayo del mismo año, fué igualmente un error del tribunal a quo concluir que si bien dichos obreros habían trabajado un número de horas adicionales éstas no habían podido ser determinadas. El segundo error señalado fué, pues, asimismo cometido.

■■ No hay duda de que en casos de esta naturaleza es al obrero a quien incumbe demostrar mediante prepon-

---

(⁴) Aunque las anteriores palabras del Juez Cardozo fueron dichas en un caso que envolvía trabajo de menores, las mismas fueron repetidas por la Corte de Distrito Federal del Distrito Sur de Iowa en el caso de *Kappler* v. *Republic Pictures Corporation*, 59 F. Supp. 112, 116, que al igual que éste trata de una reclamación por horas extras.

(⁵) Debe recordarse que hay una estipulación al efecto de que de declarar Rivera Mestre lo haría en forma similar a como ya lo había hecho García Rivera.

derancia de prueba, no sólo que realizó labor en exceso de la jornada ordinaria, si que también el número de horas extras por él trabajadas. *Vélez* v. *Royal Bank*, 65 D.P.R. 967, 972. Véase, sin embargo, *Anderson* v. *Mt. Clemens Pottery Co.*, 328 U.S. 680, en el cual se dijo a la página 687 que: "un empleado que inicia querella a tenor de lo provisto en la sección 16(*b*) de la ley, en reclamación de un salario mínimo o de horas extras no satisfechos, así como en reclamación de daños líquidos, está en la obligación de probar que realizó trabajo por el cual no se le ha compensado debidamente. La naturaleza en forma de remedio del estatuto y la gran política pública que el mismo encierra son, sin embargo, contrarios a hacer que esa obligación constituya un obstáculo imposible para el empleado . . . En tal situación, resolvemos que un empleado ha cumplido con el requisito de ley que le impone el peso de la prueba, si demuestra que en realidad ha realizado trabajo por el cual no ha sido debidamente compensado y si aduce suficiente evidencia que demuestra la cuantía y extensión de ese trabajo como inferencia justa y razonable. La obligación de aducir prueba pasa entonces al patrono, quien deberá ofrecer evidencia respecto a la cantidad exacta de trabajo realizado o evidencia que controvierta la razonabilidad de la inferencia que ha de hacerse de la prueba ofrecida por el empleado. Si el patrono deja de ofrecer semejante evidencia los tribunales pueden entonces conceder daños y perjuicios al empleado, aunque el resultado sea tan sólo aproximado. Véase la nota que aparece en 43 Col. L. Rev. 355."

En el presente caso es incuestionable que la prueba ofrecida por los obreros reclamantes cumplió de lleno con estos requisitos.

Como el inciso 4(*a*), del párrafo A, del Por Tanto del Decreto Mandatorio Núm. 3 dispone que "ningún patrono empleará a trabajador alguno en la fase agrícola de la industria del azúcar, por más de ocho (8) horas en cualquier período de veinticuatro (24) horas a menos que dicho

trabajador reciba compensación por su trabajo en exceso de dichas ocho (8) horas a razón de tiempo doble el tipo mínimo de salario aplicable . . ." los obreros reclamantes tienen derecho a que se dicte sentencia a su favor, condenando a la querellada a satisfacerles, a razón de tiempo doble y al tipo convenido, las horas extras por ellos reclamadas, con la penalidad fijada por la sección 25 de la Ley núm. 8 de 1941, supra, según fué enmendada por la Ley núm. 217 de 11 de mayo de 1945 (páginas 681, 701), más las costas.

*Debe revocarse la sentencia apelada y en su lugar dictarse otra en armonía con los términos de esta opinión.*