# 2004 DTA 133

RECEIVED

DEC 1 6 2004

SERIALS DEPARTMENT
HARVARD LAW SCHOOL LIBRARY

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL IV**

JOSÉ RAMÓN IRIZARRY
Apelante

v.

DORAL MORTGAGE CORP.
Apelada

Núm. KLAN-03-00150

San Juan, Puerto Rico, a 12 de agosto de 2004

Panel integrado por su Presidente, el Juez Gierbolini,
y los Jueces Cordero y Rodríguez Muñiz

Cordero, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El 13 de febrero de 2003, el ex-empleado José Ramón Irizarry (en adelante, Irizarry) presentó recurso de Apelación en el que nos solicitó revisión de la Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, el TPI) el 24 de octubre de 2002 y notificada el 1 de noviembre de 2002. En la misma, el TPI condenó a Doral Mortgage, Corp. (en adelante, Doral) a pagar a Irizarry la cantidad de $27,007.20 por concepto de horas extras trabajadas en exceso de la jornada regular de trabajo (incluyendo una doble penalidad) y $6,751.80 por concepto de honorarios de abogado, para un total de $33,759.00 más intereses a razón del 5.75% desde la presentación de la querella.

Veamos los hechos del caso.

### I

El 25 de marzo de 1987, Doral contrató a Irizarry por tiempo indeterminado. El 19 de enero de 1988, Irizarry comenzó a trabajar como Oficial Aprendiz de Cierre en el Departamento de Cierres de Préstamos Hipotecarios, pasando luego a ocupar el puesto de Oficial de Cierre hasta abril de 1993. El 9 de febrero de 1996, Irizarry presentó querella contra Doral en la que reclamó el pago de horas extras trabajadas durante el período de tomar alimentos y en exceso de la jornada laboral, al amparo de la Ley de Horas y Días de Trabajo, Ley Número 379 del 15 de mayo de 1948, 29 L.P.R.A. secs. 271 *et seq.* En la misma, alegó que cuando ocupó los puestos de Oficial Aprendiz de Cierre y Oficial de Cierre trabajó en exceso de la jornada legal de trabajo sin que Doral le compensara por dichas horas extras. Alegó, además, que durante dicho período trabajó más de cinco (5) horas consecutivas sin tomar sus alimentos.

El 22 de febrero de 1996, Doral contestó la querella en la que negó adeudarle cantidad alguna al demandante por concepto de horas extras o período de tomar alimentos. Luego de múltiples incidentes procesales, el 24 de febrero de 1999, el TPI emitió Sentencia Parcial en la que resolvió que Irizarry no satisfacía los requisitos necesarios para ser considerado como Administrador, por lo que no estaba exento del pago de horas extras y, a su vez, declaró con Lugar la solicitud de sentencia sumaria presentada por Irizarry.

Por su parte, el 18 de agosto de 1999, Doral presentó *Solicitud de Sentencia Sumaria Parcial por Prescripción*, en la que, en síntesis, alegó que las reclamaciones por horas extras del demandante estaban prescritas conforme a las disposiciones del Fair Labor Standard Act. El 27 de diciembre de 1999, el TPI emitió Resolución declarando sin lugar dicha solicitud. A petición de Doral, el 16 de octubre de 2000, el TPI accedió a que el pleito se tramitara bajo el procedimiento ordinario.

Escuchados los argumentos de las partes durante las vistas en su fondo, el TPI desestimó la reclamación de horas trabajadas durante el período de tomar alimentos. El tribunal adujo que, de la prueba desfilada, surgió que Irizarry hacía una pausa para tomar sus alimentos y que en ningún momento, declaró que consumiera sus alimentos mientras trabajaba. No obstante, el tribunal sostuvo la causa de acción por horas trabajadas en exceso de la jornada regular de trabajo mientras Irizarry se desempeñó como Oficial Aprendiz de Cierre y como Oficial de Cierre. Así pues, Doral solicitó al TPI reconsiderara esta última determinación bajo el fundamento de que

durante el contrainterrogatorio, Irizarry, alegadamente, admitió que no había trabajado horas extras durante el período que se desempeñó como Oficial Aprendiz de Cierre. A esos efectos, el TPI desestimó la causa de acción por horas trabajadas en exceso de la jornada regular de trabajo correspondiente al período en que Irizarry se desempeñó como Oficial Aprendiz de Cierre. El 6 de julio de 2001, notificada el día 13 de ese mismo mes y año, el TPI emitió sentencia parcial desestimando dichas causas de acción. No obstante, el tribunal mantuvo la reclamación en cuanto a las horas trabajadas en exceso de la jornada regular de trabajo mientras Irizarry ocupó el puesto de Oficial de Cierre durante el período comprendido entre julio de 1988 hasta abril de 1993.

El 18 de julio de 2001, Irizarry presentó ante el TPI moción solicitando determinaciones de hechos y conclusiones de derecho adicionales, a la que Doral se opuso. El 23 de julio de 2001, notificada el día 24 de ese mismo mes y año, el TPI emitió resolución y declaró no ha lugar la solicitud de determinaciones de hechos y conclusiones de derecho adicionales presentada por Irizarry. El 30 de julio de 2001, Doral solicitó reconsideración de la sentencia parcial emitida el 6 de julio de 2001, a la que Irizarry se opuso. El 2 de agosto de 2001, notificada el 7 de agosto de 2001, el foro sentenciador declaró no ha lugar la solicitud de reconsideración presentada por Doral. Inconforme con dicha determinación, el 17 de agosto de 2001, Irizarry solicitó ante este Tribunal revisión de la misma, siendo la sentencia parcial de 6 de julio de 2001 confirmada, el 17 de junio de 2002. ■

En cuanto a la reclamación pendiente ante el TPI sobre el pago de horas extras mientras Irizarry laboró como Oficial de Cierre, el 24 de octubre de 2002, notificada el 1 de noviembre de 2002, el TPI emitió Sentencia en la que le concedió a Irizarry la suma de $27,007.20 por concepto de horas extras trabajadas (incluyendo una doble penalidad) y $6,751.80 por concepto de honorarios de abogado, para un total de $33,759.00 más intereses a razón del 5.75%, desde la presentación de la querella. Así, pues, el 12 de noviembre de 2002, Irizarry presentó ante el TPI moción solicitando determinaciones de hechos y conclusiones de derecho adicionales, la cual fue declarada No Ha Lugar mediante Resolución notificada el 14 de enero de 2003.

Inconforme con la decisión del TPI de 24 de octubre de 2002, Irizarry acudió ante nos alegando la comisión de los siguientes errores por parte del TPI:

*"1. Erró el Tribunal de Instancia al apreciar la prueba en torno a las horas extras trabajadas por el Apelante, a base de un análisis probatorio que se aparta totalmente del requerido por la Ley Núm. 379 y su jurisprudencia aplicable, causando que la suma otorgada al Apelante por concepto de horas extras trabajadas sea errónea por ser mucho más baja de lo que en derecho procedía determinarse.*

*2. Erró el Tribunal de Instancia al negarse a resolver, como cuestión de estricto derecho, que las bonificaciones pagadas al Apelante por la Apelada no formaban parte de su sueldo para calcular el tipo por hora al cual se le tenían que pagar las horas extras, error que también causó que la suma otorgada al Apelante por concepto de horas extras trabajadas sea errónea por ser mucho más baja de lo que en derecho procedía determinarse.*

*3. Erró el Tribunal de Instancia al conceder una suma de honorarios de abogado al Apelante que resulta muy baja a tenor con la Regla 44.1 de las de Procedimiento Civil y con lo resuelto por el Tribunal Supremo de Puerto Rico en torno a honorarios de abogado en reclamaciones salariales en el caso de López Vicil v. I.T.T., 143 D.P.R. 574 (1997)."*

**II**

El derecho de los trabajadores a recibir compensación extraordinaria por trabajo realizado en exceso de la jornada laboral de ocho (8) horas diarias, es en la actualidad de origen constitucional. Art. II, sección 16 de la Constitución de Puerto Rico. Siguiendo los principios de protección y justicia social en pro del obrero puertorriqueño, la Asamblea Legislativa de Puerto Rico aprobó la Ley de Horas y Días de Trabajo, Ley Núm.

379 de 15 de mayo de 1948, 29 L.P.R.A. secs. 271 *et seq.*, según enmendada.

El Artículo 4 de la referida ley ■ define como horas extras lo siguiente:

*"(a) Las horas que un empleado trabaja para su patrono en exceso de ocho (8) horas durante cualquier período de veinticuatro horas consecutivas.*

*(b) Las horas que un empleado trabaja para su patrono en exceso de cuarenta (40) horas durante cualquier semana, a menos que las horas trabajadas diariamente en exceso de ocho sean pagadas a tipo doble.*

*(c) Las horas en que un empleado trabaja para su patrono durante los días u horas en que el establecimiento en que presta servicio deba permanecer cerrado al público por disposición legal; Disponiéndose, sin embargo, que no serán horas extras las horas que el empleado trabaja para su patrono durante los días u horas en que el establecimiento deba permanecer cerrado al público cuando el patrono ha obtenido del Secretario del Trabajo y Recursos Humanos el permiso requerido por las secs. 289 y 290 de este título, y la totalidad de horas trabajadas por el empleado durante ese día no exceda de ocho horas ni la totalidad de horas trabajadas durante la semana exceda de cuarenta horas.*

*(d) Las horas que un empleado trabaja para su patrono durante el día de descanso que se haya fijado o se fijare por ley en el caso de industrias y negocios que no están sujetos al cierre de su establecimiento.*

*(e) Las horas que el empleado trabaja para su patrono en exceso del máximo de horas de labor al día que la Junta de Salario Mínimo haya fijado o fijare para la ocupación, negocio o industria en cuestión.*

*(f) Las horas que el empleado trabaja para su patrono en exceso del máximo de horas de labor al día fijado en un convenio colectivo de trabajo."*

El patrono que obligue o permita a un empleado a trabajar horas extras vendrá obligado a pagarle a su empleado un tipo de salario igual al doble del tipo convenido o establecido para las horas regulares, excepto determinados patronos que están cubiertos por la ley pública, Fair Labor Standard Act, los cuales están obligados a pagar solamente un tipo de salario igual a tiempo y medio del tipo convenido o establecido para las horas regulares en determinadas horas extras trabajadas por sus empleados. Artículo 5 de la Ley Núm. 379, *supra*, 29 L.P.R.A. sec. 274.

Además de limitar el número máximo de horas que un empleado puede trabajar para su patrono durante un día o una semana, el Artículo 14 de la Ley Núm. 379, *supra*, 29 L.P.R.A. sec. 283, obliga a los patronos a concederle al empleado que trabaja más de cinco (5) horas corridas, una hora para la toma de alimentos. Cuando un patrono no permita a un empleado tomar alimentos durante una hora, dentro de un período mayor a las cinco consecutivas de trabajo o le reduzca el período de una hora para tomar alimentos sin las debidas autorizaciones del Secretario del Trabajo y Recursos Humanos, entonces dicho patrono estará *"obligado a pagarle por dicho período o fracción del mismo un tipo de salario igual al doble del tipo convenido para horas regulares."* Art. 14 de la Ley Núm. 379, *supra*. El período u hora para la toma de alimentos no constituye una hora extra, constituyendo el deber del patrono a pagar el doble de lo que un empleado es pagado por una hora regular de trabajo, consistente en una penalidad civil. Por tal motivo, la penalidad por no conceder el período para la toma de alimentos se suma a la cantidad adicional de dinero que un patrono tenga que pagar a su empleado por haber trabajado horas extras. *Salgado v. Tribunal Superior,* 92 D.P.R. 367, 372 (1965); *Concreto Mixto, Inc. v. Tribunal Superior,* 92 D.P.R. 808, 809 (1965); *Pamblanco v. Union Carbide,* 90 D.P.R. 712, 719 (1964).

## III
En repetidas ocasiones, el Tribunal Supremo ha indicado que corresponde al tribunal sentenciador aquilatar

la prueba testifical ofrecida y dirimir su credibilidad. La función de adjudicar credibilidad es exclusiva del juzgador de los hechos. Es norma claramente establecida que en ausencia de circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto, las apreciaciones de la prueba por el Tribunal de Primera Instancia merecen gran deferencia por parte de los tribunales apelativos, y no deben ser descartadas o modificadas arbitrariamente, ni sustituidas por el criterio del tribunal apelativo. *Trinidad v. Chade*, 153 D.P.R. ___ (2001), **2001 J.T.S. 10**, op. de 18 de enero de 2001, a la pág. 793; *Sepúlveda v. Depto. de Salud*, 145 D.P.R. 560, 573 (1998); *Sánchez Rodríguez v. López Jiménez,* 116 D.P.R. 172, 181 (1985); *Pérez Cruz v. Hospital de la Concepción*, 115 D.P.R. 721, 728 (1984); *Vélez v. Srio. de Justicia,* 115 D.P.R. 533, 545 (1984).

Al apreciar la prueba ante su consideración, los tribunales apelativos no habrán de pasar juicio sobre la credibilidad de los testimonios ofrecidos ante el foro de instancia y sustituirlo por el criterio propio. Ello es así, porque el tribunal de instancia es el foro ante el cual declararon los testigos y el cual tuvo la oportunidad de apreciar el comportamiento, evaluar la veracidad del testimonio y dirimir cualquier conflicto que surgiera en el proceso. *Pueblo v. Dávila Delgado*, 143 D.P.R. 157, 173 (1997); *López Vicil v. ITT Intermedia,* 142 D.P.R. 857, 865 (1997); *Pueblo v. Chévere Heredia*, 139 D.P.R. 1, 16 (1995). *"Se impone un respeto a la aquilatación de credibilidad del foro primario en consideración a que, de ordinario, "sólo tenemos ...récords mudos e inexpresivos". Pérez Cruz v. Hospital La Concepción, supra*, a la página 728.

## IV

En su primer error, el ex-empleado Irizarry alega haber incidido el TPI al apreciar la prueba en torno a las horas extras por él trabajadas causando que las sumas otorgadas fueran mucho más bajas de lo que en derecho procedía.

Es doctrina reconocida por nuestro Tribunal Supremo que, en una acción de reclamación de pago de horas extras y/o el pago de horas de toma de alimentos no disfrutadas, el peso de la prueba lo tiene el empleado demandante o querellante. Tiene el empleado demandante el deber de probar *"mediante preponderancia de prueba, no sólo que realizó labor en exceso de la jornada ordinaria, si que también el número de horas extras por él trabajadas." Sierra v. Eastern Sugar Associates,* 71 D.P.R. 888, 897-898 (1950). Véase, además, *Rosario v. A. de T.,* 97 D.P.R. 324, 329-330 (1969); *Campos de Encarnación v. Sepúlveda,* 94 D.P.R. 74, 82 (1967); *Matías Rodríguez v. Programas Sociales*, 92 D.P.R. 200, 206 (1965).

En el caso de autos, la prueba consistió en el testimonio del propio ex-empleado, y por la parte demandada, en el testimonio de su supervisora, Sandra Calderón (en adelante, Calderón). Una vez examinada la prueba documental y escuchada la prueba testifical presentada en el caso por ambas partes, el TPI no le dio credibilidad al testimonio del empleado a los efectos de que el patrono le requería llegar a su lugar de trabajo antes de las 8:30 a.m. y que durante los sábados cercanos a la semana suave, éste hubiese trabajado hasta las 6:00 p.m. al igual que los sábados de las semanas fuertes. Aun cuando el empleado presentó prueba testifical sobre las horas trabajadas en exceso de la jornada laboral, el TPI no le mereció credibilidad la misma y entendió que no cumplió con el peso de la prueba.

En la argumentación de dicho error, el empleado indica que la jurisprudencia ha establecido que la única prueba que el patrono puede presentar en un caso como el de autos es el récord de las horas regulares y extras que exactamente el empleado trabajó. Además, expresó que ante la ausencia de los referidos récords, la obligación de aducir prueba pasa entonces al patrono, *"quien deberá ofrecer evidencia respecto a la cantidad exacta de trabajo realizado o evidencia que controvierta la razonabilidad de la inferencia que ha de hacerse de la prueba ofrecida por el empleado."* ■ En apoyo de su contención, el empleado cita el caso de *Sierra v. Eastern Sugar Associates*, *supra*. Es preciso aclarar que en dicho caso, el Tribunal Supremo claramente establece que el reclamante tiene el peso de probar que realizó un trabajo por el cual no se le ha compensado debidamente. No obstante, más adelante aclara que se entiende que un empleado ha cumplido con este requisito de ley, si demuestra que en realidad ha realizado trabajo por el cual no ha sido debidamente compensado y si

aduce suficiente evidencia que demuestre la cuantía y extensión de ese trabajo como inferencia justa y razonable. *Sierra v. Eastern Sugar Associates, supra*, a la pág. 898. (Énfasis nuestro.) Es una vez satisfecha esta carga evidenciaria por parte del reclamante, que la obligación de aducir prueba pasa entonces al patrono, quien deberá ofrecer evidencia respecto a la cantidad exacta del trabajo realizado o evidencia que controvierta la razonabilidad de la inferencia que ha de hacerse de la prueba ofrecida por el empleado. *Id.*; *Rosario v. A. de T., supra*, a la pág. 330.

Primeramente, queremos indicar que el TPI en su Sentencia claramente especifica en sus conclusiones de derecho que conforme a una determinación errónea en derecho y conforme a lo previamente resuelto en su Resolución de 27 de diciembre de 1999, el patrono querellado no pudo presentar el récord requerido por la Ley Núm. 379, *supra*, debido a que el puesto del empleado como Oficial de Cierre fue clasificado como uno exento.

Por otra parte, hemos leído cuidadosamente la transcripción narrativa de este caso provista por las partes y hemos llegado a la conclusión de que el empleado no cumplió con su carga evidenciaria. En cuanto a esto, el Tribunal Supremo ha indicado que en los casos civiles la afirmativa es una cuestión que deberá probarse y cuando la prueba es contradictoria, la decisión deberá pronunciarse de acuerdo con la preponderancia de la prueba, ya que los tribunales no están justificados en conceder reclamaciones de salarios que no sean debidamente probadas. *Rosario v. A. de T., supra*, a la pág. 329. A tales efectos, en ese mismo caso específicamente dicho alto foro indicó que *"[s]i bien las cortes deben proteger a los obreros o empleados en sus justas reclamaciones de salarios cuando se demuestra que el patrono no los ha satisfecho, no están justificados en conceder reclamaciones que no han sido debidamente probadas."* Y que *"al que reclama salarios por horas extras no satisfechos, incumbe demostrar mediante preponderancia de la prueba, no sólo que realizó labor en exceso de la jornada ordinaria, si que también el número de horas extras por él trabajadas."* (Citas omitidas.) *Idem.*, a las págs. 329-330.

La prueba testifical del empleado fue al efecto de que, aun cuando su horario de trabajo era de 8:30 a.m. a 5:30 p.m., el patrono le requería llegar a su lugar de trabajo a las 6:00 a.m. para hacer el trabajo de *"post closing"* y que los días fuertes salía de su trabajo a las 10:00 p.m., 11:00 p.m. ó 12:00 a.m. y a veces hasta la 1:00 a.m. ■ Además, que como Oficial de Cierre tenía que trabajar los sábados de 6:00 a.m. a 5:00 ó 6:00 p.m. y en los días fuertes hasta las 9:00, 10:00, 11:00 p.m. ó 12:00 a.m. ■

Por su parte, la prueba testifical del patrono consistió en el testimonio de Calderón, supervisora de Irizarry, quien controvirtió la versión de Irizarry al indicar que normalmente ella llegaba a la oficina a las 8:00 a.m. en días normales y cuando había mucho trabajo entraba de 6:00 a 6:15 a.m. y que Irizarry llegaba de 8:00 a 8:15 a. m., ya que su hora de entrada era a las 8:30 a.m. A preguntas de la abogada de quiénes eran los Oficiales de Cierre que salían de trabajar entre las 7:30 y las 9:00 p.m. durante la última semana del mes Doral, ■ ésta mencionó a René Jiménez, Wilson Flecha y José Lizardi. Respecto a Irizarry, indicó que salía a las 7:00 p.m. y que en semanas suaves su horario era de 8:00 a.m. a 5:00 p.m., ya que recordaba que su esposa lo iba a recoger debido a que utilizaban un sólo carro. ■ Aclaró que sabía el horario de salida de éste porque ella era la última persona que se iba de la oficina del Departamento de Cierre y la primera en llegar. ■ Así también, a preguntas de la abogada de porqué Irizarry durante la última semana del mes Doral salía antes que los demás, Calderón explicó que las funciones de Irizarry eran diferentes de las de los demás Oficiales de Cierre, ya que éstos tenían que hacer los números de cierres, citar a los clientes y cerrar los casos y que por tal razón éstos se tenían que quedar hasta tarde para preparar para el día siguiente los números de cierre y si había cierres, también tenían que quedarse. Irizarry, por su parte, era el encargado de hacer el *"post-closing"* y entrar la data al libro de cierre. ■ Así también, Calderón indicó que no hubo ninguna ocasión en que Irizarry saliera después de las 8:00 p.m. en noches de cierres entre el período de julio de 1988 a abril de 1992. ■

Por otro lado, la prueba testifical logró demostrar que, aun cuando la responsabilidad primaria de entrar información en el libro de cierres era de Irizarry, éste no era la única persona ni la última en hacerlo, ya que

entre la fecha de 29 de octubre de 1991 hasta el 3 de abril de 1992, varios oficiales hicieron la entrada en el referido libro. ▮ Además, aclaró Calderón que en varias ocasiones, debido a que Irizarry no se encontraba en la oficina, ya fuera porque no se encontraba en el área, estaba en su hora de almuerzo o en su período de *"break"* o se había marchado ya del lugar de trabajo, éste no era el último en entrar la información al libro de cierres. ▮

Aun cuando en su testimonio Calderón admite que hubo ocasiones en las que Irizarry llegó antes de las 8:00 a.m., ésta aclara que las veces que esto ocurrió, él se dedicaba a hacer cosas personales, como trabajos para ayudar a su esposa, la cual trabajaba para una compañía de estudios y seguros de título y en esos momentos éste no permanecía en su escritorio. ▮ No obstante, reconoció que durante los primeros tres días de la semana del mes Doral, Irizarry había salido a las 7:00 p.m. ▮

En resumen, luego de analizar la prueba testifical presentada y creída por el TPI, hemos concluido que el ex-empleado no presentó prueba alguna durante las vistas que demostrara que el patrono le requirió que trabajara horas extras durante las semanas suaves y que durante los días fuertes permaneciera en el trabajo hasta las 10:00, 11:00 p.m. ó 12:00 a.m. o que tolerara dicha actuación de su parte. Por el contrario, de la prueba testifical y documental presentada, surge que en Doral existía la práctica de que otros oficiales llenaran el libro de cierre e hicieran el informe de *"post closing"* y que el mismo podía hacerse el próximo día laborable, por lo cual no existía razón para que Irizarry permaneciera luego de las horas laborables en el trabajo, así como tampoco para que llegara antes de su hora de entrada. El testimonio del empleado no fue suficiente para que un tribunal pueda inferir de forma justa y razonable la cuantía y extensión del trabajo alegadamente realizado en exceso de la jornada regular de trabajo. Ausente dicha carga evidenciaria por parte del empleado, no existía la obligación del patrono de aducir el peso de su prueba.

Las determinaciones de hechos del tribunal sentenciador, así como sus conclusiones de derecho, están sostenidas por la evidencia que obra en el expediente del caso, así como de la transcripción de las vistas celebradas y la exposición narrativa de la prueba oral presentada. Las mismas reflejan una apreciación racional de la prueba efectuada por el TPI, según la credibilidad que dicha evidencia le mereció.

Ante esta situación fáctica, resolvemos que, como tribunal apelativo, no intervendremos con las determinaciones de hechos, apreciación de la prueba y las adjudicaciones de credibilidad de los testimonios vertidos efectuadas por el foro sentenciador, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. En el presente caso, el análisis ponderado de la prueba presentada ante el TPI no nos produce insatisfacción de conciencia o estremece nuestro sentido de justicia, por lo que no debemos intervenir con ellas. *Flores v. Domínguez*, 146 D.P.R. 45, 49 (1998); *López Vicil v. ITT Intermedia, Inc.* 142 D.P.R. 857, 867 (1997). Por lo tanto, concluimos que el primer error no fue cometido.

## V

En su segundo error, Irizarry alega haber errado el TPI al negarse a incluir dentro de su sueldo total el pago de bonificaciones por productividad para realizar el cómputo del pago de horas extras. Le asiste la razón. Veamos.

En el caso *Beauchamp v. Holsum Bakers of P.R.*, 116 D.P.R. 522, 526 (1985), el Tribunal Supremo indicó que la Ley Núm. 96 de 26 de junio de 1956, sobre salario mínimo, establece que el término salario *"incluye sueldo, jornal y toda clase de compensación, sea en dinero, especie, servicios, facilidades o combinación de cualesquiera de ellos...."*. Similarmente, la definición adoptada por la Ley Núm. 379, *supra*, establece que el término *"salario"* incluye *"sueldo, jornal, paga y cualquier otra forma de retribución pecuniaria."* 29 L.P.R.A. sec. 288. Conforme con dicha definición, en el caso antes citado, ese alto foro concluyó que lo cobrado por concepto de comisiones *"necesariamente tiene que ser parte del sueldo."* *Beauchamp v. Holsum Bakers of P.R., supra*, a la pág. 526. A tales efectos, indicó que *"al [el legislador] no especificar una definición, no podemos*

*por interpretación hacerlo nosotros, sobre todo tratándose, como antes señaláramos, de un estatuto remedial o reparador".* *Id.* Reconocemos que ese caso, a diferencia del de autos, trataba sobre una reclamación sobre la Ley Núm. 80 de 1976 sobre despido injustificado; no obstante, el Tribunal Supremo en ese mismo caso aclaró que es orientador recurrir a otras leyes *in pari materia* para establecer una justa interpretación de una ley. *Id.*

En el caso de autos, el empleado recibía un bono mensual por productividad, el cual conforme a la definición de salario provista por la Ley Núm. 379, *supra,* es una forma de retribución pecuniaria, que forma parte del sueldo del empleado. En la actualidad, según se conoce, los patronos emplean distintos beneficios, separados del sueldo o jornal que recibe un empleado, para remunerar su labor. Este tipo de compensación muchas veces tiene la ventaja de que no se considera como un ingreso directo del empleado, sujeto a tributación, aunque su pago por el patrono sí constituye un gasto legítimo de negocio. No importa la forma que toman tales beneficios, en la práctica, todos ellos forman parte de un sólo *"paquete"* de compensación. En la medida en que dicho *"paquete"* representa el valor económico del servicio del empleado, consideramos que el sueldo mensual devengado por el empleado para el cálculo del pago de horas extras, bajo la Ley Núm. 379, *supra,* debe ser calculado a base de todas las partidas que integran el mismo, y no solamente a base de su salario básico.

Así, pues, en atención al razonamiento esbozado por el Tribunal Supremo en el caso de *Beauchamp v. Holsum Bakers of P.R., supra,* concluimos que el bono por productividad pagado a Irizarry debe ser incluido como parte del tipo de hora a base del cual debe calcularse el pago de horas extras a ser pagadas a éste. Nótese que un bono por productividad persigue el mismo objetivo que las comisiones, el cual es premiar al empleado que alcanzó o sobrepasó las metas u objetivos de producción propuestas por el patrono durante ese mes. Ante estos hechos, concluimos que incidió el TPI en el segundo error alegado.

## VI

En su tercer error, Irizarry alega que la suma concedida por el TPI por concepto de honorarios de abogado resulta ser muy baja. No le asiste la razón. Veamos.

El Artículo 13 de la Ley Núm. 379, *supra,* establece que cuando un empleado prevalece en una acción de reclamación de pago de horas extras adeudadas, u horas para la toma de alimentos no disfrutadas, éste tendrá derecho al pago de los honorarios de abogado del procedimiento. 29 L.P.R.A. sec. 282; Véase, además, *Berríos v. Eastern Sugar Associates*, 79 D.P.R. 688, 704 (1956).

No obstante, el referido Artículo 13, *supra*, no regula la cantidad a ser concedida al abogado del empleado por su labor en la acción de reclamación de pago de horas extras adeudadas u horas para la toma de alimentos no disfrutadas. Tampoco el mencionado artículo establece una cantidad mínima o máxima en la condena del pago de honorarios, resultando en que tal cantidad de dinero en honorarios de abogados sea un asunto discrecional del tribunal ante él cual se llevó el caso.

Así, también, la Ley de Reclamaciones por Servicios Prestados, Ley Núm. 402 de 12 de mayo de 1950, según enmendada, 32 L.P.R.A secs. 3114-3115, hace mandatoria la concesión de honorarios de abogado en casos de reclamaciones laborales. La política pública establecida para este tipo de casos es la de evitar que la cuantía otorgada a un trabajador u obrero se reduzca por la cantidad que paguen a sus abogados. Por tal motivo, se prohíbe expresamente todo contrato en que el trabajador se obligue directa o indirectamente a pagar honorarios a su abogado en los casos contra sus patronos. 32 L.P.R.A. secs. 3116-3117; véase, además, *Ortiz v. Aut. Edificios Públicos y Junta*, 121 D.P.R. 896, 903 (1988). Al estar el abogado impedido de cobrarle directamente a su cliente sus honorarios, éstos son fijados por el Tribunal. A diferencia de la citada Regla 44.1 (d), tal concesión no depende de la temeridad de la parte, y su propósito es remunerar al abogado por sus servicios. La Ley Núm. 402, *supra,* específicamente dispone:

"*En todo caso radicado ante los tribunales de Puerto Rico por un trabajador o empleado en que se reclame cualquier derecho o suma de dinero contra su patrono, al amparo de la legislación laboral federal o local o convenio de trabajo de naturaleza individual o colectivo y en que se conceda la reclamación en todo o en parte, se condenará al patrono al pago de honorarios de abogado, si éste no fuere uno de los abogados del Departamento del Trabajo y Recursos Humanos. Cuando se dicte sentencia a favor del patrono querellado, no se condenará al trabajador o empleado querellante al pago de honorarios de abogado....*". 32 L.P.R.A. sec. 3115. (Énfàsis suplido.)

De igual manera, la Ley Núm. 2 de 17 de octubre de 1961, 32 L.P.R.A. sec. 3132, dispone, en lo pertinente, que:

"*En todos los casos en que se dictare sentencia en favor de la parte querellante, si ésta compareciere representada por abogado particular, se condenará al querellado al pago de honorarios de abogado.*"

En el caso de *López Vicil v. ITT Intermedia, Inc.*, 142 D.P.R. 857, (1997), en ausencia de una disposición legal que cuantificara numéricamente la razonabilidad de los honorarios en las reclamaciones presentadas al amparo de la Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 L.P.R.A. sec. 146 *et seq.*, el Tribunal Supremo resolvió en reconsideración que, de ordinario, la cuantía que podrá concederse por concepto de honorarios de abogado en una reclamación victoriosa bajo la Ley Núm. 100, *supra,* será el veinticinco por ciento (25%) de la indemnización base concedida al trabajador, *López Vicil v. ITT Intermedia, Inc., supra,* a la pág. 583, y para que se pueda conceder un aumento en dicha cantidad es necesario que sea justificada mediante memorando jurado. *Afanador Irizarry v. Roger Electric Co., Inc.,* Op. de 26 de abril de 2002, **2002 J.T.S. 62**, a la pág. 1025; *López Vicil v. I.T.T. Intermedia, Inc., supra,* a la pág. 583.

En el caso de autos, aplicando por analogía la norma antes expuesta, resulta que la partida de honorarios de abogado fue razonable. La indemnización total concedida al empleado en este caso, incluyendo la doble penalidad, ascendió a la cantidad de $27,007.20 y la suma concedida por concepto de honorarios de abogado a $6,751.80, partida que, según consta en la sentencia apelada, incluye la doble penalidad requerida por el Artículo 13 de la Ley Núm. 379, *supra*, 29 L.P.R.A. sec. 282. Dicha cantidad, por tanto, es correcta, ya que equivale a una suma mayor del veinticinco por ciento (25%) de la indemnización base concedida al empleado. No obstante, concluimos que en este caso dicha cantidad debe aumentar en vista de nuestra determinación de que el TPI incurrió en el error número dos.

## VII

Por los fundamentos antes expuestos, modificamos, en parte, la Sentencia apelada y devolvemos el caso àl foro de instancia, a los efectos de incluir como parte del tipo de hora a base del cual debe calcularse el pago de horas extras a ser compensadas al empleado, la cantidad total pagada por concepto de bonificaciones por productividad mientras éste se desempeñó como Oficial de Cierre. Por último y una vez el TPI haya modificado la cantidad total a ser pagada al empleado por concepto de horas extras trabajadas en exceso de la jornada regular de trabajo, dicho tribunal deberá proceder a computar la cuantía correcta correspondiente por concepto de honorarios de abogado a tenor con lo resuelto en *López Vicil v. I.T.T. Intermedia, Inc., supra.* Así modificada, se confirma la Sentencia apelada.

Lo acuerda y manda este Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**1.** Véase caso número KLAN-01-00804.

**2.** 29 L.P.R.A. sec. 273.

**3.** Según surge de la página 8 del recurso de Apelación.

**4.** Según surge de la Transcripción de la Vista en su fondo de 21 de febrero de 2001, a la pág. 35, líneas 9-25 y pág. 36, líneas 1-4.

**5.** *Id.*

**6.** Según los testimonios vertidos en las vistas, ésta era la semana de mayor volumen de trabajo en Doral.

**7.** Según surge de la página 3 de la *"Moción Sometiendo Proyecto de Exposición Narrativa de la Prueba Oral Presentada por la Parte Querellada Apelada, Testimonios de Sandra Calderón y Pedro Colón"* presentada por la parte apelante y de las páginas 3 y 4 de la *"Moción Informativa con Relación al Proyecto de Exposición Narrativa de la Prueba Oral Conforme a la Regla 19 del Reglamento de Este Honorable Tribunal"* presentada por la parte apelada.

**8.** *Idem.*, a la página 3 y página 5, respectivamente.

**9.** *Idem.*, a las páginas 3 y 4 y página 5, respectivamente.

**10.** Según surge de la página 16 de la *"Moción Informativa con Relación al Proyecto de Exposición Narrativa de la Prueba Oral Conforme a la Regla 19 del Reglamento de Este Honorable Tribunal"* presentada por la parte apelada.

**11.** Durante la vista fueron admitidas en evidencia copias del libro de cierre de Doral, a los únicos fines de establecer que Irizarry no era la única persona que escribía en el mismo ni la última persona en hacerlo. Además, fue admitido como un documento representativo de los demás libros de cierre durante todo el período de la reclamación de horas extras.

**12.** Según surge de la página 6 de la *"Moción Sometiendo Proyecto de Exposición Narrativa de la Prueba Oral Presentada por la Parte Querellada Apelada, Testimonios de Sandra Calderón y Pedro Colón"* presentada por la parte apelante y de la página 9 de la *"Moción Informativa con Relación al Proyecto de Exposición Narrativa de la Prueba Oral Conforme a la Regla 19 del Reglamento de Este Honorable Tribunal"* presentada por la parte apelada.

**13.** *Idem.*, a las páginas 7 y 8 y la página 16, respectivamente.

**14.** *Idem.*, a la página 8 y la página 17, respectivamente.